# LIABILITY OF RAILROAD AS WAREHOUSEMAN.

[Huron Circuit Court, April Term, 1899.]

FRANCES A. FISHER v. LAKE SHORE & MICHIGAN SOUTHERN R. R. CO.

1. DELIVERY TO FREIGHT DEPOT OF GOODS TO BE CRATED, CREATES LIABILITY ON RAILROAD COMPANY, IF ACCEPTED.

> Where a carter conveys goods designed for shipment, to the freight depot of a railroad company and deposits them on the platform of such depot, where such goods are customarily delivered to and received by such company for shipment, and notifies the proper shipping agent of such company of the presence of such goods on the platform, and that they are to be shipped to a certain station on such railroad after one of the articles has been properly crated, and that a person will come and crate such article during the day, and the agent of the company expresses his assent to what is said and proposed, *Held*, this amounts to the delivery of such goods to the railroad company and its acceptance of the custody thereof as warehouseman.

. 2. PROOF TENDING TO SHOW NEGLIGENCE WHICH SHOULD HAVE GONE TO JURY.
The plaintiff upon the trial having introduced evidence tending to establish the facts above recited, and also tending to show that later on the same day such goods were removed by some person and means and to some place unknown to her, and that upon demand said company failed to restore said goods to her the court, on motion of the defendant, ruled that the plaintiff had failed to make out a case, and directed the jury to return a verdict for the defendant. *Held*, error, While it devolved upon the plaintiff to show that the defendant had been guilty of negligence in that it had failed to exercise due care in the premises whereby the goods had been lost, the facts above recited furnished some evidence of such negligence, and the case should have been submitted to the jury.

PARKER, J.

Frances A. Fisher brought her action against the Lake Shore and Michigan Southern Railroad Company before a justice of the peace to recover an amount somewhat less than $100 on account of the loss of certain goods which she had boxed up and designed to ship by the road of this company to Cleveland, Ohio, and which were lost.

The case was tried before the justice and the judgment of that court was appealed from. The case came on to be tried in the court of common pleas, and there, after the plaintiff had rested her case, the court on motion of defendant directed the jury to return a verdict for the defendant, which was done. To this ruling and direction of the court the plaintiff excepted, and on account of it she prosecutes error here.

It appears that a day or two before the first day of May, 1896, the plaintiff had shipped certain household goods by the Lake Shore and Michigan Southern Railroad to Cleveland; that on or about the first day of May, 1896, she had some additional goods prepared for shipment to the same place, some of which were packed in a large store box, and some in a small box, and there was also a sewing machine and two rocking chairs. She employed a city expressman or carter—a Mr. Roscoe— to take these goods to the freight office of the company to be shipped, and she directed him to not have them shipped until the sewing machine had been crated. It appears it was not properly crated so that it would be shipped by the railroad company.

Roscoe testifies that he conveyed these goods to the freight depot of the company in this city and that he there unloaded them upon the platform. He testifies in part as follows :

" The boxes had cards nailed on them with the name of Frances A. Fisher written on them. These cards were on the upper side as I placed them on the platform."

He also testifies that cards were tied upon the other articles,—the chairs and sewing machine. He says:—" The place where I put these goods was the usual place for placing all such goods for shipment. I had been placing goods there almost daily for seven or eight years during the time I had been in the business at Norwalk. After placing the goods, I went into the depot and then into the freight office of the company and saw Mr. Warner, the clerk in that office whose duty it was to attend to the shipment and I said to him, ' I have just put on the platform the remainder of the goods of Miss Fisher that should have gone to Cleveland with her shipment of yesterday.' Mr. Warner said, ' all right.' I then told him that she, the plaintiff, did not want the goods shipped till the sewing machine should be crated, that Mr. Schafler would be there to do it for her during the day."

The goods having been taken to the freight depot of the company by one whose duty with respect thereto ended upon their being deposited

there and put in charge of the railroad company, the carter having placed the goods upon the platform at the place where goods brought for shipment were customarily delivered to and received by the company, the agent of the company having been advised of the placing of the goods there for shipment, such shipment, as he was advised, to be made as soon as certain preparation of one of the articles might be made, and the agent having, as we view the evidence, expressed his assent to such deposit of the goods and delay of shipment, this, in the opinion of a majority of the court, amounted to a delivery of these goods into the possession and custody of the railroad company and the receiving of the goods by the railroad company as custodian thereof; not, however, in the capacity of common carrier, but in the capacity of warehouseman. The company having been advised that something remained to be done to the goods and with the goods by the shipper in order to prepare them for shipment, it would not, under such circumstances, be chargeable as common carrier.

It further appears that at about 5 p. m. of the same day Mr. Schaffer appeared at the depot to crate the machine and that at the time he came there the box of goods on account of which this suit is prosecuted was not there; it had disappeared—where or how does not appear from the record.

On the day following the plaintiff, who had the receipt for such part of the goods as had been actually shipped, appeared at the freight office of the defendant company in Cleveland and demanded her goods, including this box of goods which was not receipted for, Schaffer, who obtained the receipt for the goods from the Norwalk agent, having had no knowledge of the large box.

It appears that the company made some effort to find the goods but was unable to do so and has not delivered the goods to plaintiff.

The company having received these goods, as we hold, as warehouseman, it devolved upon the plaintiff, in order to maintain her case, to prove that the company was guilty of negligence resulting in the loss of the goods.

The petition as it was originally drafted and upon which the parties went to trial undertook to charge the railroad company as common carrier; but after the evidence was in the petition was so amended as to charge the company as warehouseman.

The chief controversy in the case arises upon the question whether there is any evidence tending to show negligence upon the part of the railroad company that would make it chargeable with the loss of these goods as warehouseman. The court of common pleas being of the opinion that there was no evidence tending to show negligence arrested the case from the jury.

On behalf of the defendant in error our attention has been called to certain authorities which, it is contended, hold substantially that where goods are lost under circumstances like these and are not forthcoming on demand of the bailor and their loss is not accounted for, it is not sufficient for the plaintiff to show that, but that the plaintiff must go farther and show affirmatively that the goods were lost through the negligence of the warehouseman.

From a reading of these cases we are of the opinion that they do not sustain this proposition. One case is found in 14th Allen, 448, the case of Sherman J. Cass v. Boston and Lowell Railroad Company. In that case the company had received and held as warehouseman a certain

cask of sugar which was lost. On the trial of the case it was agreed that the liability of the defendant as common carrier had ceased at the time of the loss, and an action was brought against it as warehouseman.

When the plaintiff's evidence was in the defendant asked the court to rule that the plaintiff had not made out his case and that the defendant was entitled to a verdict. The evidence did not tend to show any negligence upon the part of the warehouseman in the care of the goods unless it was inferable from the mere fact of the loss of the goods. The goods were lost and the loss of them was unaccounted for. The case then stood before the jury substantially as the case at bar stood at the time it was arrested from the jury.

In the case in 14th Allen, the court refused to rule that the plaintiff had not made out a case.

The defendant then introduced evidence as to the care which they had used in the custody of the property, and after the evidence was all in the defendant asked the court to instruct the jury that the burden was upon the plaintiff to show that they had not exercised ordinary care, but the judge declined so to rule and instructed the jury that the burden of showing that the loss of the sugar had not been occasioned by any want of ordinary care and diligence on its part was on the defendant; that it was not bound to show the precise manner in which the loss occurred, and, if it was unable to do so, it might exonerate itself from the burden by showing that the loss did not happen from any negligence or want of proper care on its part.

Chapman, J., delivering the opinion of the court, takes up this first question as to the ruling of the trial judge upon the motion to take the case from the jury, and this is his language upon that:

"The court are all of the opinion that the refusal to order a verdict for the defendants at the trial was right. The plaintiff's evidence showed that the defendants had received the property, and, on demand, failed to deliver or account for it. There was nothing in this evidence to show that they had any reason for not delivering it, or that any cause but their own neglect or default prevented the performance of their contract. There was certainly a case to go to the jury."

Then Judge Chapman takes up and discusses the other question as to the correctness of the ruling of the trial judge upon the question of the burden of proof, and the majority of the court in that case were of the opinion that the trial court was right upon that proposition. But Bigelow, Chief Justice, dissented.

The case of Willett and Another v. Rich and Another reported in the 7, Northeastern at page 776, overrules Cass v. R. R. Co. upon that second proposition, but does not, as we understand the case, touch upon the first proposition there discussed and decided. The syllabus in this case reads:

"In an action of contract against a warehouseman to recover damages for injuries to goods intrusted to him, the burden of proof is upon the plaintiff to show that the goods were injured by the negligence of the defendant while they were in his custody; overruling Cass v. Boston & L. R. Co., 14, Allen, 448."

In the court's opinion in this case, Morton, Chief Justice, uses language which indicates that his views are in harmony with the views of the court in Cass v. R. R. Co. upon that first proposition, i. e. as whether or not a *prima facie* case has been made out by showing the delivery and

receipt of the goods and the subsequent demand for the goods and the failure to deliver them.

This language is used on page 778: "It may be that where there is a refusal to deliver, the plaintiff may make out a *prima facie* case upon proving this fact, because such refusal, if unexplained, is some evidence of the breach of the contract. But this does not shift the burden, originally on the plaintiff, to prove a breach of contract." The burden of proof still remains on the plaintiff.

It seems to us that there has been some confusion arising from the discussion of this case as if it involved a consideration of a question of the burden of proof. We do not understand that such a question is here at the present moment. The real question is whether or not a *prima facie* case was made out that should have been submitted to the jury, whether there was *any* evidence tending to support all the material allegations of the petition, and therefore requiring that the case should be submitted to a jury.

In the case of the New York Life Insurance Company v. La Boiteaux, 4th Record, page 1, found in Bates Digest, 1st Volume, 950, this is said: "The burden of proof does not shift as the weight of evidence alternates. The presence of presumptions and the necessity of counteracting them by proof pertains to the weight of evidence and not to the burden of proof."

We are of the opinion that the ruling of the court as to the burden of proof in Willett and Another v. Rich and Another, in the 7, Northeastern, *supra*, is correct; but that does not at all affect the ruling of the court in the first case upon the other proposition as to whether or not a case was made out that required it should be submitted to a jury.

Our attention is also called to a case reported in the 2 Southern Reporter at page 255. It is the case of the Illinois Central Railroad Company v. Troustine and others. This also was cited in support of the position of counsel for defendant in error upon the question of the burden of proof.

The first proposition of the syllabus reads as follows:

"In an action against a railroad company for loss of baggage delivered to it for shipment, the court gave an instruction to the effect that, if the goods were delivered to the agent of defendant to be carried over its road to a certain point, whenever plaintiff's salesman ordered them to be shipped, and they were burned before shipment, then it was incumbent on defendant to show that they were burned *without any fault* on its part. *Held*, that the instruction was erroneous, whether on the theory of a bailment for hire or a gratuitous bailment."

Upon the first reading of that, it would seem that the court had instructed the jury that upon the facts recited appearing, the burden of proof would shift; that it would then devolve upon the warehouseman to introduce some evidence exonerating itself from liability. But that is not what was in fact charged. The words that are italicized in this syllabus are, "*without any fault*."

The fault with the charge is, as found by the Supreme Court, that it imposes too high a degree of care upon the warehouseman. In the opinion, it is said: "Under the facts assumed by this instruction, a higher degree of proof and care was imposed on appellant than is required by law. Whether, under these facts, appellant would have been a

9 O C D   27

gratuitous bailee, or a bailee for hire, it was not liable for *any, even the slightest*, fault or want of care. If a gratuitous bailee, it was liable only for gross negligence, and, if a bailee for hire, only for reasonable and ordinary care." Whereas the instruction was to the effect that if it had been guilty of *any* want of care, even the slightest, it would be liable.

As the only criticism of this charge is with respect to the degree of care which the rule therein stated imposed upon the bailee, the decision by plain implication approves the proposition that under the circumstances recited it was incumbent on the bailee to show that such care was exercised as the nature of the bailment required of the bailor. But this goes farther than we need go in this case.

A majority of this court are of the opinion that the case referred to in 14 Allen is an authority which supports the contention of the plaintiff in error, that the rule there stated is reasonable and just, that the cause should have been submitted to the jury, and that the court erred in directing a verdict for the defendant. For that error the judgment will be reversed.

Judge King: I cannot concur in the judgment reversing the court of common pleas, nor in so much of the opinion of a majority of the court as holds that this record discloses any evidence that ought to have been submitted to the jury showing a delivery of the box of goods in question and its acceptance by the railroad company.

*G. R. Walker*, attorney for plaintiff.

*C. P. & L. W. Wickham*, attorneys for defendant.