BOYD BURROWES, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.

FILED JUNE 10, 1910.   NO. 15,846.

1. Courts: DECISIONS: REVIEW OF EVIDENCE. In considering an assignment that the judgment of the lower court is not sustained by the evidence, an appellate court is not required to set out and discuss the evidence *in extenso*. It is sufficient if the opinion fairly reflects the evidence material to a decision upon such assignment.

2. Carriers: SHIPMENT OF GOODS: LIABILITY. When a shipper surrenders the entire custody of his goods to a common carrier for immediate transportation and the carrier so accepts them, the liability of the carrier as a practical insurer of the safe delivery of the goods at once attaches; but such liability does not attach until the goods are unconditionally surrendered by the shipper and accepted by the carrier.

3. Rehearing Denied. Our former opinion adhered to.

OPINION on motion for rehearing of case reported in 85 Neb. 497. *Rehearing denied.*

FAWCETT, J.

A reargument was allowed upon a motion for a rehearing. Counsel for plaintiff vigorously assails our former opinion (85 Neb. 497) upon the ground that "the opinion does not reveal the facts." This is a serious charge, but a careful reexamination of the record shows it to be without foundation. That the opinion does not mention and discuss all of the testimony will be conceded in any case, but the opinion in the case at bar fairly reflects all of the material evidence in the record. This was sufficient. The gravamen of counsel's complaint is that the opinion does not show that all of the goods which were to go as freight had been loaded, and that the goods yet to be loaded were such as were to go as baggage. The fact, even if it had been undisputed (which is not the case), that all of plaintiff's property which was to go as freight had been loaded and that only such as was to go as baggage remained to be loaded, is immaterial, for the reason that, under plaintiff's arrangement with defendant's agent, it was all to be loaded by plaintiff in the same car—the one which had been switched onto the side track for plaintiff's accommodation. It was entirely at plaintiff's pleasure when he would load it. The only requirement was that, if he desired to have the car attached to the passenger train which was to leave the station at 9:30 on Monday morning, he must have the loading completed before that time. The defendant was accommodating him in setting apart for his use a freight car and in agreeing to attach such freight car to its passenger train. No trains pass through Loup City on Sunday. It is apparent that the agent of the defendant was not required to be at the station on Sunday. He lef' town in the forenoon, having previously advised plaintiff that he was going to do so. On the evening before, he had the engine of a passing freight train switch the freight car onto a side-track; and on Sunday morning, before leaving town, advised plaintiff, through one of plaintiff's employees, as to the location of the car.

During the afternoon of Sunday, plaintiff and his men, with the aid of a drayman, loaded a portion of his stuff, keeping out the sleeping tents and cook tent, the gasoline cook stove and cooking utensils, and certain bedding for use that night, intending to load them into the car before train time next morning. No report was made to the agent of what had been done. Plaintiff was unable to even state whether or not the car door had been closed. The drayman, it is true, testified that he helped to push the door shut when they got the stuff in Sunday afternoon, but it was not locked, or sealed, or precautions of any kind taken to guard the car against tramps, thieves, or other evilly disposed persons—a condition which, as shown by the testimony of defendant's agent, would not have been permitted to exist had delivery been made. About 5 o'clock the next morning, before plaintiff was awake, the car took fire and was burned. No arrangements had been made for tickets, no money had been paid to the company, the agent had no knowledge that any thing was in the car, no weights had been furnished defendant's agent by plaintiff, nor any way bill made out, nor anything done which would indicate even an attempt at delivery of the stuff that had been loaded to the defendant company. The car was not yet ready for shipment. It was not under the control of defendant. Defendant would have had no right, at the time of the fire, to have coupled on to the car and hauled it to its proposed destination. Plaintiff still had the right, if he saw fit, to remove all his stuff from the car the next morning and decline to ship at all, or he might decide not to go on the early train, but to wait for the next and later train. The case is not like one where freight is delivered to a railroad company or loaded upon a railroad company's depot platform for immediate shipment. If such had been the case here, clearly the defendant would have been liable, but we do not see how it can be said that plaintiff's goods had been delivered to the company for immediate shipment until they had all been loaded and the company notified

of that fact. Both of these important elements are wanting. The writer has very serious doubts as to whether even the liability of a warehouseman attached to defendant by what had been done by plaintiff at the time of the fire; but, be that as it may, it is clear that no liability as a common carrier had yet attached.

Counsel for plaintiff refers to *Chicago, B. & Q. R. Co. v. Powers,* 73 Neb. 816 cited in our former opinion, and says that he is satisfied with the law therein announced. In that opinion the court, speaking through Mr. Commissioner OLDHAM, said: "It is also clearly shown that the owners of the cattle intended to take the stock out of the pens in the morning, to feed, water and range them until about 10 o'clock. We think the rule well established that, when a shipper surrenders the entire custody of his goods to a common carrier for immediate transportation, and the carrier so accepts them, the liability of the carrier as a practical insurer of the safe delivery of the goods at once attaches. *Kansas City, P. & G. R. Co. v. Barnett,* 69 Ark. 150, 61 S. W. 919. But, we think it equally well settled that such liability does not attach until the goods are unconditionally surrendered by the shipper and accepted by the carrier." We think that decision decisive of the case at bar. There had not been an unconditional surrender by the shipper and an acceptance by the carrier in the present case. Hence, under the rule there announced, no liability had attached. Then, again, we are unable to see any difference between an arrangement by which one shipper is privileged to take stock out of the pens in the morning, for any purpose, prior to shipment, and an arrangement that another shipper is to have the right to keep out part of his shipment until the next morning before loading. There could not, in the very nature of the case, be an unconditional surrender until the final loading in either case, and a final delivery to the carrier.

Our former judgment is clearly right, and is adhered to.

REHEARING DENIED.