## 2853. BAINBRIDGE GROCERY COMPANY *v.* ATLANTIC COAST LINE RAILROAD COMPANY.

1. "The responsibility of the carrier commences with the delivery of the goods, either to himself or his agent, or at the place where he is accustomed or agrees to receive them." Civil Code of 1895, § 2279.

2. There is nothing in the laws or public policy of this State which prevents a shipper and a railroad company from making a contract in relation to the use of a side-track, wherein it is agreed that, as to cars loaded by the shipper on the side-track, delivery to the carrier is understood to have taken place whenever the carrier removes the car from the side-track and places it in its freight-train for shipment; it being understood that this principle is not to be applied in derogation of the right of the shipper to insist upon the carrier's promptly accepting goods tendered to it for transportation, or as in any wise limiting the railroad's liability for its own negligence.

3. Where in an action against a railroad company as common carrier, for the loss of goods, it appeared that the goods were loaded in a car upon a side-track as to which the shipper and the carrier had a contract of the nature indicated in the preceding headnote, and, though the company's agent had issued bills of lading for the goods, that delivery to the carrier had never been consummated in the manner stipulated in the contract, and that shortly after being loaded the goods were consumed by an accidental fire not occasioned by the railroad company or through its negligence, the court did not err in awarding a nonsuit.

DECIDED JANUARY 31, 1911.

Action for damages; from city court of Bainbridge—Judge Crosland presiding. July 5, 1910.

*Hawes & Pottle,* for plaintiff. *Pope & Bennet* for defendant.

POWELL, J. The Bainbridge Grocery Company brought suit against the Atlantic Coast Line Railroad Company for the value of certain merchandise which was contained in a railroad car, and which was burned on a side-track adjacent to the grocery company's place of business and connected with the railroad company's line of railway. The case was tried on an agreed statement of facts. It was agreed that the grocery company loaded the car, sealed it with a sealing apparatus furnished by the railroad company, drew up a bill of lading for the shipment, presented the same to the railroad company's agent, and obtained his signature to it, during the afternoon of November 24, 1908. About 6.30 o'clock in the evening of that day, while the goods were in the car so loaded, they were totally destroyed by accidental fire which was not caused by the railroad company or through any negligence on its part. It was further agreed that while there was no unreasonable delay on

the part of the railroad company in moving the car, they had in the yard at Bainbridge a switch-engine ordinarily used in moving such cars, and that the car could have been moved by that engine without waiting for the arrival of a freight-train. At the time of this loss there was in existence between the grocery company and the railroad company a contract by which the railroad company had leased to the grocery company the side-track on which the car was located. Among other things, it was agreed in the contract that "the said railroad company shall not be liable for any goods, articles, or property of any description that may be shipped by [the grocery company] over the said side or spur track until and unless the car or cars containing such goods, articles, or other property are taken from the said side or spur track and placed into the train of the said railroad company for removal and transportation; nor shall the said railroad company be liable or responsible for any goods, articles, or other property of any description whatsoever delivered by it on said side or spur track, after the car or cars containing the same is or are taken from the train of said railroad company and placed on said side or spur track." In another portion of the contract the grocery company agreed to be responsible for the care of cars placed for them on the side-track, and to reimburse the railroad company against loss or damage resulting thereto, unless the loss or damage was occasioned by negligence of the railroad company. The trial judge awarded a nonsuit.

We affirm the judgment awarding the nonsuit. We think it clear that the effect of the agreement between the parties was to fix the time and circumstances under which delivery to and from the carrier should be consummated. It was a matter of mutual convenience. In order to cut out those questions of inference and issues of fact which so often arise as to whether delivery to the carrier has been completed, especially as applied to the case of wholesale houses doing their own loading and making frequent shipments, it seems very expedient that they (the shipper and the carrier) should have agreed on some definite act or circumstance which should evidence delivery; and where the terms are fair and reasonable, we know of nothing in the public policy of the State which prevents such contracts from being made.

It often expedites the handling of the shipment of commodities that the shipper should be enabled to get a bill of lading for the

property before he makes that surrender of the property to the rail-road company which is essential to the raising of a liability in its capacity of common carrier. In the present case the grocery company and the railroad company had a definite agreement, the effect of which was to state that although the bill of lading should be sooner issued, and although the goods should be sooner loaded, the shipment should not be considered as delivered to the carrier until the carrier took possession of it by removing the car from the side-track and placing it in one of its trains. On the other hand, if the railroad company should take a car from the side-track and place it in one of its trains, delivery would be effectuated, although no bill of lading had been issued, and though no formal tender of the goods for shipment had been made to the station agent. Of course, if the grocery company had loaded a car, had prepared it for ship-ment, and had asked the railroad company's agent to remove it from the side-track, so as to make the railroad company responsible for the delivery, and the railroad company had refused, the grocery company would have had a cause of action of the nature of that which would accrue to any other shipper who had tendered a com-modity to a carrier refusing to accept it for shipment. But no such point as that is involved in this case.

We can not agree with counsel for the plaintiff in error in the construction they give to the contract (with a view of hav-ing it held to be contrary to public policy) when they assume that it is capable of being so interpreted as to relieve the carrier of liability where it sends its engine to the side-track to remove a car, and places it upon another side-track and there allows it to be burned. An engine and one car may make a train, and we think that the contract before us means that if the carrier should send its switch engine, get the car, and remove it to its own main line, or to another side-track, with a view of handling it for transporta-tion, a delivery would be effectuated. It will be presumed, in the absence of a clear expression to the contrary, that the parties in-tended to contract as to those matters as to which they could law-fully contract and were not attempting to contract in violation of public policy.

This contract, as will be noticed, does not undertake or attempt to limit or to affect the railroad company's liability as a common carrier. It merely attempts to define the circumstances under

which delivery for shipment shall be understood as having taken place between the parties. Prior to this act which constitutes delivery no lien in favor of the carrier for freight arises, the shipper has control of the shipment, and though the car is sealed, the shipper may unseal it and remove the goods at will, may take out goods or put in others. The railroad company is not asked to assume responsibility. No assumption of custody on its part as common carrier is called for until this act of delivery has been completed, and the railroad's liability as carrier should not sooner attach. There should be a consideration, either actual or potential, for every assumption of liability. Now, suppose in this case that after the bill of lading had been issued, but before the car had been taken from the side-track, the grocery company had decided not to ship the goods, and had broken the seal and had placed the goods back in the warehouse, could the railroad company have called upon the grocery company to pay the freight? We think not; and we think further that this is the test by which it is fair to determine the question of its assumption of liability, where the goods have been lost without any fault on its part.

"The responsibility of the carrier commences with the delivery of the goods, either to himself or his agent, or at the place where he is accustomed or agrees to receive them." Civil Code of 1895, § 2279.                                          *Judgment affirmed.*