### 10748

#### BEHRMAN v. A. C. L. R. R. CO.

#### (109 S. E. 397)

CARRIERS—CARRIER HELD NOT LIABLE FOR LOSS OF COTTON STOLEN FROM
PLATFORM PRIOR TO ISSUANCE OF BILL OF LADING.—A carrier, having
posted notice that it would not be liable for goods left on plat-
form until issuance of bill of lading, was not liable for loss of bale
of cotton placed on platform by shipper, but stolen prior to issuance
of bill of lading, notwithstanding shipper's custom of placing cotton
on platform when purchased without obtaining bill of lading until
the close of the business day, when bill of lading for the full day's
purchases would be issued.

Before MOORE, J., Berkeley, ————, 1917.    Reversed.

Action by S. Behrman against Atlantic Coast Line Rail-
road Company.    From judgment for plaintiff the defendant
appeals.

*Messrs. Rutledge, Hyde & Mann* and *Winter & Winter,*
for appellant, cite:    *Carrier has right to adopt reasonable
regulations:*    4 R. C. L., Sec. 138.    *What constitutes de-
livery to carrier:* Moore on Carriers (2nd Ed.), Vol. I,
174-5; 77 S. E., 994; 72 S. E. 463.

*Mr. John O. Edwards,* for respondent, cites:    *Carrier
may accept goods even before bill of lading is issued:*  38
Ill., 354; 87 Am. Dec., 301; 81 Ill., 511; 36 N. Y. Sup.
Ct., 527.    *What amounts to a delivery:*  73 Ala., 396; 49
Am. Rep., 54.

November 4, 1921.

The opinion of the Court was delivered by MR. JUSTICE
FRASER.

The agreed statement of facts set out in the case is as
follows:

"This is an action by S. Behrman, plaintiff, against
Atlantic Coast Line Railroad Company, defendant, for the

_____
Authorities discussing the question as to what constitutes delivery
of freight to carrier, are collated in notes in 32 L. R. A. (N. S.)
313 and L. R. A. 1916C, 608.

value of one bale of cotton, alleged to have been delivered by plaintiff to defendant at Monck's Corner, S. C., on or about November 20, 1915, for shipment to Charleston, S. C., and not accounted for to plaintiff. The action was tried before Magistrate Altman at Monck's Corner, January 25, 1917, and resulted in a verdict for plaintiff; whereupon the defendant appealed to the Circuit Court, Judge Ernest Moore presiding. Judge Moore having affirmed the judgment of the Magistrate, notice of appeal to the Supreme Court was given, and the case now comes up on appeal on the following agreed statement of facts:

"At the trial in the Magistrate's Court it was shown that the plaintiff was in the habit of buying cotton from the farmers, changing the marks and shipping en bloc. On the day in question this particular bale of cotton was placed on defendant's platform at Monck's Corner by B. F. Murray, who notified plaintiff. Plaintiff paid Murray for the cotton and changed the mark, but did not notify defendant's agent that the cotton was on the platform. During the day plaintiff bought other cotton—a total of 16 bales that day. Late in the afternoon plaintiff applied to defendant's agent for a bill of lading for the 16 bales. The agent agreed to give him a bill of lading for 15 bales, all that he could find on the platform, but said he knew nothing about the 16th bale, and declined to give a bill of lading for it. No trace of the missing bale has ever been found.

"It was shown on behalf of defendant that there had been a prior suit between the same parties for a missing bale of cotton, for which defendant had been required to pay. Defendant posted a notice at its depot, which plaintiff admits having seen, and to which he admits his attention was particularly directed at the former trial, to the effect that the railroad would not be liable for goods or freight of any kind left on its platform until after the shipper had received a bill of lading. Although this notice had been displayed for a long time, it was shown that plaintiff and

4—S. C. 118

one or two other shippers had been in the habit of placing cotton on the platform as it was purchased, and of getting a bill of lading for the full day's purchases just before closing time.

"Defendant contended at the trial, and in the Circuit Court, that it could not be held responsible for cotton or other property placed on its platform unless it has issued a bill of lading, or at least had been notified and had accepted the property for shipment. Plaintiff claimed that, since the custom had been for merchants to leave cotton on the platform until the close of the business day, and then get a bill of lading for the entire amount, defendant was estopped from disclaiming responsibility for cotton placed on its platform, even though a bill of lading had not been issued, and the agent had not been notified.

"The case comes before this Court on the same questions that were raised in the Magistrate's Court and in the Circuit Court."

This case is very nearly the same as the case of *Copeland v. Railway,* 76 S. C., 476; 57 S. E., 535. The differences are fatal to the respondent's view. The Copeland case was a "fire case," but it was not tried on that theory but on the theory that the cotton had been delivered to the railway as a common carrier. In that case there was no notice limiting liability. The respondent claims that, although in this case there was a notice, it had been disregarded and it was a question of fact as to whether it had been waived or not. In this the respondent is in error. The notice did not forbid the placing of cotton on the platform, but limited the liability to the time of the giving of the bill of lading. There was no evidence that this was disregarded. If the cotton had been burned the custom might have been construed as consent to the placing of the cotton on the right of way. The cotton was not burned, but stolen. The railway is liable for things burned on, but not for things stolen from the right of way. The difference is fatal to

the respondent's case. The judgment in the Copeland case was affirmed on the scintilla doctrine. There is another difference, and that is that the unburned cotton was taken by the railway and sold for its own account. That was evidence from which a ratification might have been inferred. There are no such facts in this case.

Making allowances for the differences in the two cases, the Copeland case is conclusive of this case, and the judgment appealed from is reversed.

MR. JUSTICE COTHRAN: I concur in the opinion rendered by MR. JUSTICE FRASER. The action, as the agreed case shows, was for the value of a bale of cotton, alleged to have been delivered by the plaintiff to the defendant for shipment and not accounted for by the defendant. It is therefore distinctly an action against the railroad company as a common carrier, and not as a warehouseman. The onus was upon the plaintiff, therefore, to show facts sufficient, at least prima facie, to establish the relation of the railroad company to him to have been that of a common carrier. The undisputed facts are as follows:

The plaintiff is a cotton buyer at Monck's Corner; he was in the habit of buying cotton from farmers who brought it into town in wagons; after a sale was consummated the farmer would have the cotton weighed and placed upon the depot platform, after which it was settled for by the plaintiff at his place of business; it was the custom of the plaintiff and other buyers to leave the cotton thus placed on the platform until the close of the business day, and then get a bill of lading for the entire lot purchased and placed during the day, the railroad company receiving no specific notice of such placing; there had been a prior suit between the same parties for a bale of cotton that had been so placed but could not be found, and the defendant was required to pay for it; the defendant posted a notice at its depot, which plaintiff admits having seen, and to which he admits his attention was particularly di-

rected at the former trial, to the effect that the railroad would not be liable for goods or freight of any kind left on its platform until after the shipper had received a bill of lading. For the purpose evidently of counteracting the effect of this notice, this statement appears in the Case:

"Although this notice had been displayed for a long time, it was shown that plaintiff and one or two other shippers had been in the habit of placing cotton on the platform as it was purchased, and of getting a bill of lading for the full day's purchases just before closing time."

During the day of the particular occurrence the plaintiff bought a bale of cotton from a farmer by the name of Murray. Murray placed the bale on the platform and notified the plaintiff, not the defendant. The plaintiff paid Murray for the cotton and changed the marks, but did not notify the defendant that the cotton was on the platform. During the day he bought fifteen other bales which were similarly placed. After the close of business the plaintiff applied to the railroad agent for a bill of lading for the Murray bale and the other fifteen bales which he had bought during the day. The Murray bale could not be found, and the agent declined to issue a bill of lading for more than the fifteen bales then on the platform. No trace of the missing bale has ever appeared, and there is not the slightest explanation in the evidence as to the cause of its disappearance. It was not burnt, but whether stolen from the platform or shipped in error to another point does not appear.

The plaintiff sued in the Magistrate's Court for the value of the lost bale, and recovered a judgment; on appeal to the Circuit Court the Magistrate's judgment was affirmed, and from that order the defendant has appealed.

The facts are conceded. There are no issues of fact in the case, and therefore the rule that this Court in a law case has no power to review the findings of fact below is without applicability. The conclusions to be drawn from

these admitted facts are legal, as to which this Court has ample power of review. *Whitney v. R. Co.,* 38 S. C., 365; 17 S. E., 147; 37 Am. St. Rep., 767, where it is held.

"While it may be admitted that a question of delivery is a mixed question of law and fact, yet there was no conflict of testimony here. Matters of law may be passed upon by the Court."

The question of law for determination is: Do these facts tend to establish the relations of common carrier on the part of the railroad company? If they do not, as I shall endeavor to demonstrate, the judgment should be reversed. There is no allegation and no effort on the part of the plaintiff to establish the relation of warehouseman, but he has chosen to attempt the establishment of the relation of common carrier, a relation which generates a liability so drastic that relief can be had only upon the ground that the loss occurred by act of God or the public enemy. It is but fair, therefore, that in making that choice the plaintiff must take it with its concomitant conditions; that the burden is upon him to establish, at least *prima facie,* the existence of that relation.

He has attempted to do this by allegation and proof that the cotton was delivered to the railroad company for shipment. These are the elements of the relation, and of course, if he has established them, he is entitled to his verdict.

It is pertinent to inquire, therefore, what are the essential elements of delivery, and then to compare the facts of this case with them. In my opinion the authorities fully sustain the following proposition:

In order to charge the carrier with the practically absolute liability of a common carrier as compared with the limited liability of a warehouseman, the burden is upon the owner of the goods to establish: (1) That there has been a complete delivery of the goods to the carrier, actual or constructive; (2) that the delivery has been made for

shipment, with full shipping directions; (3) that the goods have been accepted by the carrier for immediate shipment or at such time as the convenience of the carrier may suggest; (4) that the goods have gone into exclusive possession of the carrier and that nothing further is to be done with or to them by the owner.

The rule is thus clearly stated in 1 Hutch. Carr. (3d. Ed.) § 105:

"The delivery must be complete. The duties and obligations of the common carrier with respect to the goods commence with their delivery to him; and this delivery must be complete, so as to put upon him the exclusive duty of seeing to their safety. The law will not divide the duty or obligations between the carrier and the owner of the goods. It must rest entirely upon the one or the other; and until it has become imposed upon the carrier by a delivery and acceptance, he cannot be held responsible for them."

The same author says at Section 112:

"The delivery must be to the carrier or his agent for immediate transportation; for if the goods are delivered to him to be stored for a certain time or until the happening of a certain event, or until something further is done to prepare them for transportation, or until further orders are received from the owner, the carrier becomes a mere depositary or bailee until the appointed time has expired, or the other contingency happened, upon which the carriage is to commence, or until further orders have been given, as the case may be; for nothing could be more unjust than to permit the owner of the goods to impose upon a mere depositary or warehouseman, whether he has yet become related to the goods as carrier or not, the extremely hazardous responsibility of the common carrier, so long as it might suit his interest or convenience to do so."

"The general and well-settled rule is that the liability of the common carrier commences wherever and as soon as the goods have been delivered to and accepted by him solely

for transportation, although they may not be put immediately *in itinere,* but are at first, for his (the carrier's) own convenience and preparatory to the voyage or journey for which they are intended, temporarily deposited in his wharf or storeroom.   In such cases the deposit is a mere accessory to the carriage, and does not postpone his liability as common carrier to the time when they shall be actually put in motion towards their place of destination." 1 Hutch. Carr. § 113.

"To effect a delivery to the carrier there must be either actually or in legal effect a complete surrender to him of possession and custody, and, as a consequence, all control over the goods must be abandoned by the owner until the purpose of the bailment has been accomplished; and until this has been done it cannot be said that the carrier has assumed any responsibility for them as a carrier." 1 Hutch. (3d Ed.) § 119.

In *Missouri R. Co. v. McFadden,* 154 U. S., 155; 14 Sup. Ct., 990; 38 L. Ed., 944, the railroad company had actually issued a bill of lading for the cotton, but as a matter of fact it was in the possession of a compress company for subsequent delivery to the railroad company, and was destroyed by fire before actual delivery.   The Court held:

"The liability of a carrier begins when the goods are delivered to him (the carrier) or his proper servant authorized to receive them for carriage."

The quotation from Hutchinson set forth above is approved by the Court, adding: "This doctrine is sanctioned by a unanimous course of English and American decisions," citing a large number of them, and stating, "Indeed, the citations might be multiplied indefinitely."

In *Watts v. Railroad Co.,* 106 Mass., 466, it is held:

"The question arising in this case relates to their liability in respect to goods received at the depot to be carried. In respect to such goods their liability as carriers com-

mences as soon as the duty of immediate transportation arises, and not while they are delayed for the convenience of the owner."

In *Turner v. Railroad Co.*, 86 Conn., 71; 84 Atl., 298; Ann. Cas. 1913D, 637, it is held (quoting from syllabus):

"The liability of a common carrier of goods commences upon complete delivery of the goods for immediate transportation, and until that time it does not hold the goods in the capacity of a common carrier."

The opinion states

"The law is well settled that, until the goods to be carried are delivered for immediate transportation, the receiver does not hold them in the capacity of common carrier. His liability in that capacity commences upon the complete delivery of the goods for immediate transportation."

In a note to this case it is stated:

"The responsibility of a common carrier for goods intrusted to him commences when there has been a complete delivery for the purpose of immediate transportation. If part only of the goods is delivered and such part is lost or injured while awaiting the delivery of the remainder, the liability of the carrier is that of a warehouseman only. The liability as insurer commences only when the duty of immediate transportation arises. *Missouri Pac. R. Co. v. Riggs,* 10 Kan. App. 578, mem., 62 Pac. 712; *Dunnington v. Louisville, etc., R. Co.,* 153 Ky. 388, 155 S. W. 750; *Watts v. Boston, etc., R. Corp.,* 106 Mass. 466; *Burrowes v. Chicago, etc., R. Co.,* 87 Neb. 142, 126 N. W. 1084, 34 L. R. A. (N. S.) 223; *Fisher v. Lake Shore, etc., R. Co.,* 9 Ohio Cir. Dec. 413, 17 Ohio Cir. Ct. 491; *Union Steamship Co. v. Drysdale,* 32 Can. Sup. Ct. 379. See, also, *Barron v. Eldredge,* 100 Mass. 455, 1 Am. Rep. 126; *London, etc., F. Ins. Co. v. Rome, etc., R. Co.,* 144 N. Y. 200, 39 N. E. 79, 43 Am. St. Rep. 752; *Stewart v. Gracy,* 93 Tenn. 314, 27 S. W. 664; *Gulf etc., R Co. v. Insurance Co. of North America (Tex.)* 28 S. W. 237."

In *Bainbridge Co. v. Railroad Co.,* 8 Ga. App. 677, 70 S. E. 154, the car had been placed upon a side track and loaded and a bill of lading had been issued the carrier, and the shipper had, however, expressly agreed that the shipment should not be deemed delivered to the carrier until it had actually taken possession of it. The Court held that the relation of common carrier had not been created.

In *Wilson v. Railroad Co.,* 82 Ga. 386, 9 S. E. 1076, it is held that wood piled up along a railroad track, to be loaded by the owner when he could get the cars, is not completely delivered to the company.

In *Railroad Co. v. Byrne,* 100 Fed. 359, 40 C. C. A. 402, it is held that, where a carrier has constructed pens or yards in order to facilitate the loading of stock, the mere placing the stock in such pens will not be sufficient to impose upon the carrier the duties and liabilities of a common carrier.

In *Mente v. I. C. R. Co.,* 7 Orleans App. 154, it is held that, while it is true that the custody of a carrier begins as soon as the goods are delivered by the shipper at the place appointed by the carrier for their reception, and before they are actually placed in the cars, still this custody is not that of a common carrier but that of a warehouseman, unless the goods are so delivered to the carrier that it may immediately and without awaiting any further action on the part of the shipper, commence its service of actual transportation.

In *Anderson v. Railroad Co.* (Miss.) 38 South. 661, the cotton was placed on a station platform built for cotton for shipment. According to custom the shipper requested a car from the nearest station, but the conductor failed to comply with the request. The Court held that, as no bill of lading had been issued, no actual delivery of the cotton made, and nothing to establish an implied acceptance of the shipment, the relation of common carrier had not been established.

In *Basnight v. Railroad Co.,* 111 N. C. 592, 16 S. E. 323, it is said:

"Taking the facts most strongly in favor of the plaintiff, he asked of the defendant's freight agent a car to load with lumber to go to Philadelphia. The agent pointed out to the plaintiff a car which he might use for the desired purpose. The plaintiff loaded the car with lumber, and finished on the night of the 24th of December, but did not notify defendant's agent that the car was ready for shipment, nor of the name of the consignee. Treating the loading of the car upon defendant's track as a delivery to defendant and an acceptance, it was not yet ready for transportation, for the defendant had not been notified of its readiness, nor to whom it was to be shipped. It was necessary for the defendant to await further orders before shipment. Where goods are delivered to a common carrier to await further orders from the shipper before shipment, the former, while they are so in his custody, is only liable as warehousemen. *O'Neill v. New York, C. & H. R. R. Co.,* 60 N. Y. 138; *Wells v. Wilmington & W. R. Co.,* 51 N. C. (6 Jones) 47, 72 Am. Dec. 556; Angell, Carr. 129. He is only responsible as carrier where goods are delivered to and accepted by him in the usual course of business for immediate transportation."

In *Railroad Co. v. Lumber Co.,* 170 Ala. 627, 54 South. 205, Ann. Cas. 1912D, 965, it is held that where a carrier, at the request of a shipper, in pursuance of its usual practice, placed a car on a side track to be loaded with lumber, but failed to move it upon request of the shipper, in the absence of shipping instructions, no responsibility as a carrier arose.

In *Nelson v. Railroad Co.,* 157 Ky. 256, 162 S. W. 1129, the carrier had placed a car upon a side track; the car was loaded by the shipper; the carrier was notified of the loading and requested to move it; nothing was said about the shipment of the car or to whom it was to go. The Court held that the relation of common carrier had not been established.

In *Dunnington v. Railroad Co.,* 153 Ky. 388, 155 S. W. 750, a car had been placed by the carrier on a side track to be loaded by the shipper; it was partly loaded; no bill of lading was issued and no notice given to the carrier; the Court held that, although the carrier placed the car on the siding to be loaded by the shipper and to be moved after being loaded, there was no evidence that it was the custom of the carrier to take charge of a car until notified that it had been loaded, nor of a custom to treat freight thus partly loaded as delivered to and accepted by the carrier, and that accordingly the relation of common carrier had not been established.

In *Barron v. Eldredge,* 100 Mass. 458, 1 Am. Rep. 126, it is held:

"The responsibility of a common carrier for goods intrusted to him commences when there has been a complete delivery for the purpose of immediate transportation. * * * The delivery must be for immediate transportation, and, of course, it cannot be complete if anything remains to be done by the shipper before the goods can be sent on their way."

In *Wilson v. Railroad Co.,* 82 Ga. 386, 9 S. E. 1076, the Court approved the charge of the trial Judge which was stated to have been:

"The Court charged the jury, in substance, that delivery is complete when, actually or in legal effect, the possession is surrendered to the carrier, and the owner abandons all control over the goods until the carriage is completed, and that not until this has been done does the responsibility of the carrier commence, either for loss or detention. Also, that if deposit along the line was made for the convenience of the owner in delivering at some future time, and if the carrier did not assume possession and custody to the exclusion of the owner, the wood was not accepted for shipment, and the carrier's responsibility would not begin until something more was done to accomplish the bailment. Also. that if plaintiff's vendors deposited the wood in this way, and continued to exercise acts inconsistent with its exclusive

possession and custody by the company as a common carrier, the bailment would not begin until there was a complete surrender by the plaintiff to the carrier for shipment. Under the facts in evidence, and according to the authorities, these instructions were correct. Hutch. Carr. §§ 82-99, inclusive; 2 Ror. R. R., 1279 et seq. We think it clearly appears that under the system which both parties had in contemplation it was expected that, before delivery was consummated, the owner would either load the cars himself, or have it done by the company at his expense, after special request. Delivery on board the cars, according to that system, would terminate the plaintiff's possession, and be the inception of possession by the carrier."

In *Dixon v. R. Co.,* 110 Ga. 173, 35 S. E. 369, the syllabus by the Court is:

"The relation of shipper and carrier does not begin between the owner of goods and a railway company, though the former may have delivered the goods to the latter, if after such delivery anything required, either by law or the contract, remains to be done by the shipper, and in such case the rights and liability of the company are those only of a warehouseman."

The opinion declares:

"While the company, therefore, retained this property on board its cars at its depot, on account of the failure of the shipper to comply with the conditions precedent to its shipment, it occupied, as to him, the position of a warehouseman."

In a note to L. R. A. 1916C, 612, the author states the rule thus:

"As a general rule the responsibility of a common carrier for goods received by it begins as soon as the same are delivered and ready for immediate transportation. But, on the contrary, if the goods when so deposited are not ready for immediate transportation, and the carrier cannot make arrangements for their carriage to the place of destination

until something further is done, or some further direction is given or communication made concerning them by the owner, the deposit must be considered to be in the meantime for his convenience and accommodation, and the receiver, until some change takes place, will be responsible only as a warehouseman. The party bringing the goods must first do whatever is essential to enable the carrier to commence, or to make needful preparations for commencing, the service required of it before it can be made liable or subjected to responsibility in that capacity."

In *Railroad Co. v. Lowery* (Tex. Civ. App.) 155 S. W. 992, it is held that, in order to constitute a delivery, complete control of the goods must be given to the carrier; that is to say, the owner must not retain any manner of control over the goods, and if any one else retains such control, it must be as the agent of the carrier and not as the agent of the shipper.

The case of *Whitney v. Railroad Co.*, 38 S. C. 265, 17 S. E. 147, 37 Am. St. Rep. 767, is one of questioned delivery to the consignee after the carriage had terminated. The car containing the cotton had been placed on a spur track built for the manufacturing company; the bill of lading had been surrendered; the freight had been paid; the seals had been broken by the manufacturing company and the cotton partly unloaded. The plaintiff contended that it had not been delivered. The Court held otherwise, and applied the same test to delivery by the carrier as should be applied to delivery to it, viz., the possession and control of the property. It is the converse of the case at bar, but settled by the same principle.

In *Brown v. Railroad Co.*, 19 S. C. 39, it is assumed to be the law that no liability as common carrier attaches until the goods shall have come into possession of the carrier and under its control.

In *Railroad Co. v. Byrne*, 100 Fed. 359, 40 C. C. A. 402, it is held that a railway company which permits stock to be

placed in the pens which it has prepared by the side of its tracks to facilitate loading and unloading does not thereby receive the stock for shipment, or take possession or assume charge of it as a common carrier; that the limit of its liability is that of a warehouseman, to exercise ordinary care in the construction and maintenance of its pens.

In 10 C. J. 226, it is said:

"It is well settled that, where the carrier is directed by the shipper to do that which is incompatible with its common-law duty as carrier, as, for instance, not to forward the goods until further orders, there is no such delivery and acceptance as will render the carrier liable as such. Under these circumstances it is liable only as an ordinary bailee, so long as such special instructions are operative."

In 10 C. J. 225, it is said:

"Delivery cannot be complete if anything remains to be done by the shipper before the goods can be sent on their way."

In *Stapleton v. Railroad Co.* 133 Mich. 187, 94 N. W. 739, it is held that, if the goods are merely placed in the carrier's depot for the shipper's convenience, and are not ready for shipment until the shipper has done something further to them, the carrier is not liable as a common carrier but only as a warehouseman.

In *Missouri P. Co. v. Riggs,* 10 Kan. App. 578, 62 Pac. 712, it is held that, where goods are delivered to a carrier to be shipped, but are not to be shipped until other goods which are to be shipped with them are delivered, the liability of the carrier in the meantime is only that of a warehouseman. The Court declares:

"Where goods are received by the carrier to be forwarded in the usual course of business, the liability of a common carrier attaches immediately; but where the goods are not to be shipped in the regular course of business, but are to be retained at the depot at the shipper's instance, the liability is that of a warehouseman only. The rule, broadly stated,

is that if, after the delivery of the goods for shipment, anything remains to be done by the shipper, the liability of the carrier as an insurer does not attach, and it is responsible only as a warehouseman."

In *Railroad Co. v. Powers,* 73 Neb. 816, 103 N. W. 678, it is held that where the stock, while in the carrier's pens or yards, awaiting transportation, is subject to the right of the shipper to remove it when necessary for food and water, the carrier's liability will be no greater than that of an ordinary bailee, and that he will be liable only where he has failed to exercise ordinary care.   The syllabus by the Court states:

"When a shipper surrenders the entire custody of his goods to a common carrier for immediate transportation, and the carrier so accepts them, the liability of the carrier at once attaches."

"Such liability does not attach until the goods are unconditionally delivered by the shipper and accepted by the carrier."

In *Grand Co. v. Ullman,* 89 Ill. 244, it is held in substance that, where goods are delivered to a railroad company for transportation at its earliest convenience, nothing further remaining to be done in reference to them by the owner, the company is liable as a common carrier for their loss.

The doctrine of constructive delivery without notice to the carrier is well recognized; it may exist by an express agreement that a deposit of goods at a particular place shall be a valid delivery, or by a well-known and established custom to receive the goods in that way.   Such an agreement, either expressed or implied, must necessarily go to the extent that such deposit shall be accepted as a delivery for transportation; it surely cannot exist in the face of an express notice of which the owner has knowledge, that it shall not be so accepted without the issuance of a bill of lading.

In *O'Bannon v. Exp. Co.,* 51 Ala. 481, it is held that, to render a carrier liable as a common carrier for the loss of

goods, there must have been an actual delivery of the goods to him, or a constructive delivery, with notice to him of an intention thereby to place them in his care and custody. Merely placing them in such a position that he could easily have taken them, but without calling his attention to them, is not sufficient.

In *Southwestern R. Co. v. Webb,* 48 Ala. 585, it is held that, in an action against a railroad company for failure to deliver cotton received by it for transportation, the railroad company is not liable as a common carrier for cotton stolen or lost after deposit by the owner upon a station platform, unless it be shown that the company or its agents had notice of the deposit and received the cotton for transportation as common carrier.

The case of *Copeland v. Railroad Co.,* 76 S. C. 476, 57 S. E. 535, is, in my opinion, one of an entirely different character, and has little, if any, application to the facts of the case at bar. While the question does not seem to have been raised in the case, as a matter of fact it was a case of liability, independently of the relation of common carrier, under what is known as the Fire Statute (Section 3226 of Civ. Code 1912); an absolute liability upon destruction of property by fire which originates upon the right of way of a railroad company; the only exception being where the property has been placed upon the right of way unlawfully or without the consent of the railroad company. It was not contended by the company that the cotton had been placed on the platform without its consent; on the contrary, the custom had long existed with their consent. The judgment is easily sustainable, therefore, under the statute.

But, considered as an action not under the statute, but against the railroad company as a common carrier, as it in fact appears to have been considered by the Court, the facts are clearly distinguishable from those of the case at bar in the following particulars: (1) The cotton was deposited on the platform "marked ready for shipment"; in the case

at bar that fact does not appear; in fact it was not marked for shipment at all, and was not ready for shipment until other cotton making a carload had been purchased.     (2) The agent there gave the owner no notice that cotton left on the platform under such circumstances was at the owner's risk; here the agent, with the instinct of a burnt child, posted a notice, which the plaintiff admits he saw and which was particularly called to his attention before the loss, that "the railroad would not be liable for goods or freight of any kind left on its platform until after the shipper had received a bill of lading."     (3)     There was evidence that after the fire the salvage of the cotton was sold by the railroad company, from which it might have been inferred that they acknowledged responsibility for the cotton; no such circumstance appears here.

The charge of the Circuit Judge, approved by this Court, exactly fits the facts of this case:

"If it was not the custom of the defendant company in dealing with Mr. Copeland to allow him to put cotton on their platform for the purpose of shipping it and make themselves liable for it, unless he called for a bill of lading and notified them that it was there for shipment, then, under those circumstances, he would not be entitled to recover."

And again:

"Whenever a railroad company permits any one to put cotton on their platform for the purpose of shipping without objection on their part, and does anything to lead the parties putting the cotton there to believe that they had accepted it for the purpose of shipping it, and it is afterwards destroyed while in their possession, under those circumstances then the company would be liable."

How is it possible to conclude that the railroad company induced the owner to believe that they had accepted the cotton placed upon the platform, even without objection, for shipment, in the face of the notice referred to?     A man must be endowed with a feeble brain indeed to believe that

the railroad company accepted the cotton for shipment when he placed it upon the platform without their knowledge when he was told specifically that they did not intend to accept it until a bill of lading had been issued. In my opinion the testimony does not tend to establish a single one of the elements essential to the relation of common carrier.

It is not pretended that there was a complete delivery of the 16 bales of cotton at the time the lost bale was placed upon the platform. If the shipment included only that particular bale it is not claimed that it was actually delivered to the railroad company; the contention is that it was constructively delivered by placing it on the platform without notice to the company, and in the face of an express declaration and notice to the plaintiff that it would not be considered as delivered or accepted until the bill of lading had been issued. It was placed there by the plaintiff for his convenience until the remainder of the carload could be assembled. In the light of the notice he received, it must be assumed that in doing so he undertook to shoulder the risk of loss.

The so-called delivery was not for immediate shipment, as the plaintiff admits that the shipment was not to go forward until the carload had been made up; the cotton was not marked with any shipping directions, and none given to the carrier. The cotton had not gone into the exclusive possession of the carrier, which is absolutely essential to the relation. The plaintiff had full control of it and could the next minute have moved it off of the platform. That there was something further to be done by the owner to the shipment is admitted by his statement that the Murray bale was to remain on the platform until the remainder of the carload was completed.

No notice of the placing of the cotton on the platform was given to the agent, which is necessary to constitute a constructive delivery, unless the custom of the company jus-

tified his failure to do so, of which there is no evidence. On the contrary, if he had given such notice it could not have constituted constructive delivery, which is a question of intention, in view of the positive notice repelling any such implication.

ACTING ASSOCIATE JUSTICE W. G. BELSER (concurring) : This is an action to recover for a bale of cotton lost from the defendant's platform at Monck's Corner, S. C. The facts appear in the agreed statement, and are undisputed, the bale was deposited on the platform during the day, and a bill of lading for this bale and 15 other bales, which had also been deposited on the platform by or for the plaintiff, was applied for late in the afternoon. The bale in question was then missing, and has never been discovered. No notice was given to defendant's agent when the bale was left on the platform, and there was no evidence to show how long the bale remained on the platform before its removal, or that it was ever brought to the knowledge of defendant's agent that it was there prior to the application for the bill of lading and discovery of the loss. Plaintiff, who was a cotton buyer, was in the habit of buying cotton during the day, having the cotton bought placed on the platform, and getting a bill of lading en bloc at the close of the business day. The defendant, having had previous trouble with the plaintiff about the similar loss of a bale of cotton, had posted a notice to the effect that it would not be responsible for property left on the platform unless a bill of lading had been issued for same; and this notice had been brought to the personal attention of the plaintiff.

The plaintiff based his right to recover on the ground that the deposit of the bale on the platform amounted to delivery to the carrier for shipment, rendering the carrier liable as insurer; there was no claim that the cotton had been deposited with the carrier as warehouseman, or any proof of its negligence in that capacity. The issue therefore nar-

rows to the consideration of the question whether or not there was evidence establishing, or tending to establish, a delivery of the cotton to the carrier for shipment.

The essential elements of delivery to the carrier for shipment were lacking. These elements include (1) complete surrender of the goods into the custody of the carrier, with instructions to the carrier for their shipment, and (2) the acceptance, actual or implied, of the goods by the carrier for shipment. 5 Ency. L. (2d Ed.) 181; 4 R. C. L. 167; 1 Hutch. Carr. §§ 105, 113, 119. Mere deposit upon an open railroad platform cannot per se be regarded as a delivery into the exclusive possession of the railroad. No notice was given the defendant's agent that the bale was delivered ready for shipment, and in fact it was not ready for shipment when deposited; for it is conceded that the bale of cotton was placed on the platform by the plaintiff to await the collection of the day's purchases before shipment. These facts warrant no other inference than that the cotton was placed on the platform by the shipper for his convenience and remained in his control at least for the purpose of completing the lot to be shipped. Since no notice had been given the agent that the bale had been placed there for shipment, there was nothing to invoke the custody of the carrier or prevent the shipper from removing the bale of cotton at will. Moreover, in the absence of shipping instructions, it is impossible to see how there could have been an acceptance of the bale for shipment; neither the shipper, the assignee, the route, or destination was known to the carrier. Even the subject of the shipment—the existence of the bale of cotton on the platform—was unknown. How, then, could there be any meeting of minds or contract of carriage, actual or implied, which is necessary to initiate the relation of shipper and carrier?

The facts in this case do not show a constructive delivery to the carrier by deposit of the bale on the platform pursuant to an agreement or custom between the shipper and carrier

to deliver in that manner, as in the case of *Copeland v. Railway Co.,* 76 S. C. 476, 57 S. E. 535.     In the Copeland Case the cotton was placed on the platform marked ready for shipment; it remained there for sufficient time (not having been destroyed until some hour of the night following the day of delivery) to warrant the inference that the carrier knew it was there; and the custom by the carrier to accept shipment in this manner without objection was shown. This Court held that the evidence to sustain the judgment against the carrier was "weak," but under the scintilla doctrine was properly submitted to the jury, whose verdict concluded the issue.     In the case at bar the material facts are different, and clearly distinguish the cases.     For aught that the evidence here discloses, the bale in question may have been removed immediately after having been placed on the platform.     The posted notice—actual knowledge of which had been brought to the attention of the plaintiff—that the railroad company would not be responsible for goods left on the platform unless a bill of lading was obtained—prevents the inference of a custom or tacit agreement to accept such deposit as delivery for shipment.

That the plaintiff, notwithstanding this notice, was in the habit of placing cotton on the platform as bought, and getting a bill of lading at the end of the business day, does not show a disregard or waiver of the notice by the railroad in dealing with the plaintiff.     On the contrary, this course of dealing was perfectly consistent with the notice given, and the railroad company had the right to assume that cotton placed by the plaintiff on the platform remained at his risk until a bill of lading was applied for.     If such notice is to be held ineffective, and in the face of it a mere deposit on the platform to render the carrier liable, then the railroad, if it desires to escape unknown and unknowable responsibility, would be without recourse save to fence off its platform from the public or place a guard about it.

I therefore concur in the opinion of MR. JUSTICE FRASER.

MR. CHIEF JUSTICE GARY (dissenting) : This is an action to recover the value of a bale of cotton, which was tried before a magistrate, and resulted in a verdict in favor of the plaintiff, whereupon the defendant appealed to the Circuit Court, which affirmed the judgment of the magistrate, and the defendant again appealed to this Court.  The facts are thus stated in the record :

"At the trial in the Magistrate's Court it was shown that the plaintiff was ·in the habit of buying cotton from the farmers, changing the marks, and shipping en bloc.  On the day in question this particular bale of cotton was placed on defendant's platform at Monck's Corner by B. F. Murray, who notified plaintiff.   Plaintiff paid Murray for the cotton and changed the mark, but did not notify defendant's agent that the cotton was on the platform.   During the day, plaintiff bought other cotton—a total of 16 bales that day.   Late in the afternoon, plaintiff applied to defendant's agent for a bill of lading for the 16 bales.   The agent agreed to give him a bill of lading for 15 bales, all that he could find on the platform, but said he knew nothing about the sixteenth bale, and declined to give a bill of lading for it.   No trace of the missing bale has ever been found.

"It was shown on behalf of defendant that  there  had been a prior suit between the same parties for a missing bale of cotton, for which defendant had been required to  pay.  *Defendant posted a notice at its depot, which plaintiff admits having seen, and to which he admits his attention was particularly directed at the former trial, to the effect that the railroad would not be liable for goods or freight of any kind left on its platform, until after the shipper had received a bill of lading.   Although this notice had been displayed · for a long time, it was shown that plaintiff and one or two other shippers had been in the habit of placing cotton on the platform as it was purchased, and of getting a bill of lading for the full day's purchases   just   before   closing   time.* (Italics added.)

"Defendant contended at the trial and in the Circuit Court that it could not be held responsible for cotton or other property placed on its platform, unless it had issued a bill of lading, or at least had been notified and had accepted the property for shipment. Plaintiff claimed that, since the custom had been for merchants to leave cotton on the platform until the close of the business day, and then get a bill of lading for the entire amount, defendant was estopped from disclaiming responsibility for cotton placed on its platform, even though a bill of lading had not been issued, and the agent had not been notified.

"The case comes before this Court on the same questions that were raised in the Magistrate's Court, and in the Circuit Court."

The following are the exceptions:

"First. His Honor erred in holding that defendant was responsible for cotton placed on its platform, without a bill of lading having been issued, or defendant's agent being notified; whereas he should have held that defendant's responsibility could not begin until after the cotton had been actually delivered for shipment.

"Second. His Honor erred in not holding that, when plaistiff, with full notice that defendant declined to assume responsibility for property for which a bill of lading had not been issued, placed his cotton on the platform, without obtaining a bill of lading or notifying defendant's agent, any loss sustained was the result of his own negligence, and defendant could not be held liable therefor.

"Third. His Honor erred in not holding that, inasmuch as only 15 bales could be accounted for at the time when plaintiff applied for a bill of lading, the legal presumption was that the other bale had been removed by some other than the defendant, and that defendant was not responsible for its disappearance."

The law is well settled that findings of fact by the Circuit Court, on appeal from a magistrate's decision, are not

reviewable by this Court. *Gossett v. Gladden,* 112 S. C. 144, 99 S. E. 752; *Dingle v. Railway,* 112 S. C. 390, 99 S. E. 828. Therefore, if there was any testimony sustaining the judgment rendered by the Circuit Court, it cannot be reversed by this Court on the ground that it was not sustained by the testimony.

If the first sentence which we have italicized stood alone, it might be successfully contended that there was not such a delivery of the bale of cotton as rendered the defendant liable for its loss. But the first must be considered, in connection with the second italicized sentence.

In the case of *Copeland v. Railway,* 76 S. C. 476, 57 S. E. 535, this Court, in discussing the question whether there was error on the part of the Circuit Judge in refusing the motion for nonsuit, said:

"It is contended especially that there was no evidence to show that the cotton was ever delivered to defendant in any way to create the relation of shipper and carrier or entail liability for its safekeeping. * * * The plaintiff testified that the cotton was delivered to defendant on its platform marked ready for shipment, before 5 o'clock on October 13, 1903; that no notice or shipping directions were given defendant's agent that day, and no receipt or bill of lading was taken; that the 8 bales were a part of a lot of 25 bales he had agreed to ship the Orangeburg Manufacturing Company, and he was waiting to procure the remainder of the lot before actual shipment, and that in such cases he generally got a receipt from the agent when he had completed the number sold; that he did not act differently with this lot of cotton from what he did when he delivered other cotton; * * * that the agent never gave him personal notice that cotton left on the platform under such circumstances was at the owner's risk. * * * While the testimony tending to show liability of the defendant may be weak, we cannot say the case was improperly submitted to the jury. Whether the defendant had any notice that the cotton was delivered for

shipment was left to be inferred by the jury *from all the circumstances of the case, the publicity of the delivery on the platform, the opportunity for observation, and the course of dealing with the plaintiff in like cases."* (Italics added.)

His Honor, the Circuit Judge, in that case charged the jury as follows:

"It does not make any difference if they did have a custom with other people that it was to be put there before a certain hour and bills of lading given for it, yet, if in their dealing with Mr. Copeland, it was their custom and usage to allow him to put cotton on their platform for the purpose of shipping it, and they afterwards shipped it and gave him a bill whenever he called on them for it, if it was burned while in their custody and care, the railroad would be liable. * * * I charge you further, as a matter of law, for the purpose of having this case settled in the event they want to carry it to the Supreme Court, that whenever the railroad company permits any one to put cotton on their platform for the purpose of shipping without objection on their part, and does anything to lead the parties putting the cotton there to believe that they had accepted it for the purpose of shipping it, and it is afterwards destroyed while in their possession, under those circumstances then the company would be liable."

The foregoing charge was held by this Court to be free from error.

Under the custom and usage that existed between the plaintiff and defendant, the defendant's agent knew that the plaintiff intended to place cotton on its platform during the day for the purpose of shipment, and that it was not necessary for the plaintiff to get a bill of lading when each bale purchased during the day was placed on the platform, but that he would get the bill of lading for the full day's purchases just before closing time.

There is not a particle of testimony tending to show that after the cotton was placed on the platform the plain-

tiff was in any manner responsible for its loss. He complied in every respect with the custom and usage that prevailed between him and the defendant, and it would be against justice and equity to allow the defendant to take advantage of its own wrong in failing to exercise due care in the protection of the cotton after it had been delivered to the railroad company in the manner contemplated by the custom and usage that existed between these parties.

We concur in the opinion of MR. JUSTICE FRASER that the Copeland case is conclusive of this case, but we cannot agree with him that there are differences in the two cases that render necessary a reversal of the judgment rendered by the Circuit Court.

For these reasons, I dissent.

MR. JUSTICE WATTS concurs.