### COPELAND, MANAGER, v. SOUTHERN RY.

1. PLEADINGS—COMPLAINT—TRUSTEE.—One making a contract for the benefit of another is a trustee with an express trust, and in suit on such contract, he should aver for whose benefit the action is brought and the facts from which the trust relation arises, but here refusal of motion to require plaintiff to so amend his complaint is not prejudicial error, as, under defendant's general denial, plaintiff proved for whom he was trustee and the nature of the trust.

2. CARRIER—FREIGHT—CUSTOM.—There was some proof in this case from which jury could infer that it was the custom between the agents of the railroad and plaintiff for him to place cotton on railroad platform depot and carrier would accept it as freight delivered for shipment without special notice to that effect, and give him a bill of lading or receipt for it when he called for it, and if there was such custom the carrier would be liable as for freight regularly received.

Before WATTS, J., Bamberg, Winter Term, 1906. Affirmed.

Action by J. D. Copeland, Manager, against Southern Ry. Co. From judgment for plaintiff, defendant appeals.

*Mr. Robert Aldrich,* for appellant, cites: *Trustee of an express trust must allege for whom the action is maintained:* Code of Proc., 132, 134; Pom. Code Rem., secs. 128, 175, 124, 143, 171-182. *Delivery must be clearly shown:* 5 Ency., 520; 21 Ency., 498; Moore on Carriers, 133 *et seq. Custom is a general use:* 27 Ency., 702. *Agent had no authority to make agreement sued on:* Moore on Car., 367 *et seq.*

· *Mr. Jno. R. Bellinger,* contra, oral argument.

April 1, 1907. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff, styling himself J. D. Copeland, Manager, and alleging that now and at the times mentioned in the complaint he is and was engaged in business as trustee of an express trust under said name, brought this action to recover of defendant five hundred dollars, the value of eight bales of lint cotton, which he alleged was delivered by him to the defendant October 13, 1905, upon its platform at Bamberg, S. C., to be transported by it to Orangeburg, S. C., and there delivered to the Orangeburg Manufacturing Company for the usual freight charges to be paid by the plaintiff as agreed by defendant, but that no receipt or bill of lading was then taken therefor, in accordance with the usage and custom prevailing between plaintiff and defendant in regard to the shipment of cotton, and that said cotton was destroyed by fire while in the custody of defendant. The defendant made a general denial, and the trial resulted in a verdict and judgment for plaintiff.

Before answering defendant made a motion to require plaintiff to make his complaint more definite and certain by declaring the nature and scope of his trust and for whom he is trustee. This motion was refused by Judge Watts, and plaintiff's fifth exception alleges error. We think there was no reversible error. Section 134 of the Code of Civil Procedure authorizes a trustee of an express trust to sue in his own name without joining with him the person for whose benefit the action is prosecuted, and defines a trustee of an express trust to include a person with whom or in whose name a contract is made for the benefit of another. In such suits the complaint should aver for whose benefit the action is brought and the facts from which the trust relations results. 22 Ency. Pl. & Pr., 193. However, under defendant's subsequent denial of the allegation as to plaintiff's being such trustee, plaintiff testified as to the nature of the trust and the person for whom he was trustee, and hence there was no prejudicial error.

Defendant's first exception is to the refusal of motion for nonsuit. It is contended especially that there was no evidence to show that the cotton was ever delivered to defendant in any way sufficient to create the relation of shipper and carrier or entail liability for its safe-keeping. The testimony in behalf of plaintiff may not have been very strong, but under the *scintilla* doctrine, which prevents a nonsuit if there is any evidence whatever tending to establish the plaintiff's case, the exception must be overruled. The plaintiff testified that the cotton was delivered to defendant on its platform marked ready for shipment before five o'clock on October 13, 1905; that no notice or shipping directions were given the defendant's agent that day and no receipt or bill of lading was taken; that the eight bales was a part of a lot of twenty-five bales he had agreed to ship the Orangeburg Manufacturing Company, and he was waiting to procure the remainder of the lot before actual shipment, and that in such cases he generally got a receipt from the agent when he had completed the number sold;

that he did not act differently with this lot of cotton from what he did when he delivered other cotton without having the entire lot made up; that the cotton would have been shipped the next morning but for the fire; that frequently when he had no receipt or bill of lading the defendant's agent would come on the platform and ask where the cotton was to be shipped; that the agent never gave him personal notice that cotton left on the platform under such circumstances was at the owner's risk. There was also some testimony from which it might have been inferred that a small portion of plaintiff's lot of cotton, which was not consumed by the fire, was gathered up by defendant's agent and sold for the defendant. While the testimony tending to show liability of the defendant may be weak, we cannot say the case was improperly submitted to the jury. Whether defendant had any notice that the cotton was delivered for shipment was left to be inferred by the jury from all the circumstances of the case, the publicity of the delivery on the platform, the opportunity for observation, and the course of dealing with the plaintiff in like cases.

The Court charged the jury: "If you believe it was the custom between the servants and agents of the defendant railway company and Mr. Copeland that Mr. Copeland was to put his cotton on their platform and mark it for the purpose of having them ship it, and get a bill of lading any time afterward whenever they were ready to ship it, and if the cotton was put there in accordance with this custom and agreement, if there was such a custom between the servants of defendant company and Mr. Copeland, and they accepted it under those circumstances, and it was burned while in their possession, then the railroad company would be liable if it was the custom and usage between Copeland and the company that Copeland could put his cotton on their platform for the purpose of shipping it. It does not make any difference if they did have a custom with other people that it was to be put there before a certain hour and bills of lading given for it, yet, if in their dealing with Mr. Copeland,

it was their custom and usage to allow him to put cotton on their platform for the purpose of shipping it, and they afterwards shipped it and gave him a bill whenever he called on them for it, if it was burned while in their custody and care, the railroad would be liable. I charge you further, as a matter of law, if it was not the custom of the defendant company in dealing with Mr. Copeland to allow him to put cotton on their platform for the purpose of shipping it and make themselves liable for it, unless he called for a bill of lading and notified them that it was there for shipment, then, under those circumstances, he would not be entitled to recover.

"I charge you further, as a matter of law, for the purpose of having this case settled in the event they want to carry it to the Supreme Court, that whenever a railroad company permits anyone to put cotton on their platform for the purpose of shipping without objection on their part, and does anything to lead the parties putting the cotton there to believe that they had accepted it for the purpose of shipping it, and it is afterwards destroyed while in their possession, under those circumstances then the company would be liable."

The second, third and fourth exceptions object to this charge, not that it is erroneous as matter of law, but that it was inapplicable and calculated to mislead the jury, as there was no allegation or evidence of such custom and agreement as that detailed in the charge; and if there was evidence of such custom and agreement there was no evidence that defendant's agents had authority to bind defendant by such custom and agreement contrary to the established rules of the defendant company.

Having sustained the Court in submitting the case to the jury, the instructions given cannot be held to be inapplicable for want of evidence to which they may be referred. They related strictly to the case sought to be made by the plaintiff and could not have misled the jury.

The judgment of the Circuit Court is affirmed.