8674

BENNETTSVILLE & CHERAW RAILROAD CO. v. GLENS FALLS INSURANCE CO.

1. INSURANCE—EVIDENCE.—In an action on a policy insuring a railroad company against loss or damage to cotton delivered for shipment and for which it has issued its bill of lading, evidence as to an agreement between the railroad company and its customers as to acceptance of cotton, and issuance of bill of lading is competent to show when the railroad company received the cotton as a common carrier.

2. IBID.—CONTRACTS.—Where a railroad company under an agreement with a shipper permits cotton to be stored on its platform until enough is assembled to make up a shipment when a bill of lading was to be issued, it receives the cotton as a common carrier, and an insurance company is liable for its loss or damage by fire under a policy making it liable for loss accruing after issuance of a bill of lading, although the bill of lading was not issued until after the fire had started, and the cotton had been scattered to facilitate putting out the fire.    Rules for construing insurance contracts stated.

3. IBID.—IBID.—The terms in an insurance contract, "cotton on the platform and in the depots," include cotton around about the platform and depot, and cotton thrown from the platform and scattered around to secure from destruction by fire.

4. ISSUES.—It is supposed the trial Judge in deciding issues of fact submitted by consent, did not consider any incompetent or irrelevant evidence.

*Divided Court.*

Before Jos. A. McCULLOUGH, special Judge, Marlboro, April, 1913. Affirmed.

Action by Bennettsville & Cheraw Railroad Company, against Glens Falls Insurance Company. Defendant appeals on the following exceptions:

1. "It is respectively submitted that his Honor, the presiding Judge, erred in overruling the objection of defendant's counsel to the testimony of E. H. Duvall and other witnesses as to an agreement between said Duvall, representing Alex. Sprunt & Son, of Wilmington, N. C., for the delivery of cotton in bales by wagons at plaintiff's platform at Kollock, by which said plaintiff was to issue bills of lading each afternoon for all cotton delivered during the day, its liability as a common carrier, however, to begin on delivery of said cotton for shipment; and in refusing defendant's subsequent motion to strike out all such testimony, because inadmissible as the alleged agreement was between other parties, without the knowledge or consent of defendant and not binding on it.

2. "It is respectfully submitted that his Honor, the presiding Judge, erred in holding and ruling that 'the contract was intended to insure the plaintiff against any liability as a common carrier for cotton in bales, in transit cars, or in or on depots, or platforms, on lines of assured's road. That the stipulation to the effect that the liability of the railroad company attaches from the issue of assured's bill of lading would not, under the agreed statement of facts in this case, and the undisputed facts, prevent a recovery. That the cotton here was actually delivered to the railroad company as a common carrier, and was accepted by it as

such.   Its liability in case of loss attached.    The stipulation with reference to the bill of lading only goes to the question of delivery and acceptance, and the delivery and acceptance can be proven and established otherwise than by the issuance and acceptance of the bill of lading.'   Because in so holding and ruling, his Honor treated the contract as intended to secure a certain object stated by him as sought by the plaintiff, and which object was not otherwise revealed, and then interpreted the contract accordingly, by giving force and effect to only the first clause of paragraph of the rider, and declining to give any effect to the second clause, which fixed the period of the insurance on each lot of cotton, that is, its beginning and its termination, essential and vital elements in·any contract, but especially an insurance contract.

3. "It is respectfully submitted that his Honor, the presiding Judge, erred in considering the testimony and recognizing the agreement between the shipper and the railroad company mentioned in the first exception as valid and binding on defendant and enforceable as against it, and constituting a reason why it was liable under said policy, notwithstanding that the bill of lading was not issued until after the fire, and the destruction of practically all of the 43 bales of cotton, which he did in the last half of the ruling.

4. "It is respectfully submitted that his Honor, the presiding Judge, erred in ruling and holding that the defendant was liable under its said policy, notwithstanding it appeared that when said bill of lading was issued said cotton was mostly consumed, and all of it was then scattered about the near-by grounds, and not in bales or on platform, etc., as required by the terms and conditions of said policy.

5. "It is respectfully submitted that his Honor, the presiding Judge, erred in holding that the interpretation and construction of the contract as to its not attaching until

issue of bills of lading fixed by the parties thereto after deliberate consideration five months before the fire, as shown by the letters in evidence and the declaration and admission of Mr. Page, general manager of plaintiff, was not binding on them, and was immaterial.

6. "It is respectfully submitted that his Honor, the presiding Judge, erred in failing to give to the contract its natural, fair and reasonable construction in all of its terms and conditions invoked and relied upon by defendant, and in giving it a strained and unauthorized construction, ignoring and disregarding plain and essential conditions of its becoming effective, especially when there was no sufficient evidence of waiver to be considered, or which was considered.

7. "It is respectfully submitted that on the above grounds his Honor, the presiding Judge, erred in holding the defendant liable to plaintiff for the amount of the loss sustained on said cotton and directing the jury to find a verdict therefor, with interest, against the defendant."

*Messrs. John T. Seibels* and *J. G. Owens,* for appellant.

*Messrs. McColl, McColl & LeGrande,* and *Stevenson, Matheson & Stevenson,* contra.

October 26, 1913.   The opinion of the Court was delivered by

MR. JUSTICE WATTS.   This was an action brought to recover three thousand and five dollars and thirty-two cents insurance for 43 bales of cotton burned on the depot platform of the plaintiff at Kollock, S. C.   The plaintiff alleges that the defendant, by contract in writing on August 4th, 1909, agreed to insure the plaintiff for a term of one year from August 20, 1909, against all direct loss and damage by fire, as stated in paragraph one of its "rider," in the words: "On all liability of assured as a common carrier of cotton in

bales, in transit, in cars, or in or on depots, or platforms, on line of assured's road." The policy also has this: "This insurance covers all legal liability of the assured as a common carrier, not exceeding the actual cash value (market) of the cotton immediately preceding the fire, which cash value shall in no case exceed what it would then and there cost to replace same with cotton of.like kind and quality, and attaches from the issue of assured's bill of lading, and terminates upon delivery to consignee or succeeding carrier." After issue was joined the case came on to be heard before Hon. Joseph A. McCullough, as special Judge, and a jury, after evidence was taken, and case argued, the Court directed a verdict for the plaintiff for the full amount claimed, $3,517.21, and after entry of judgment defendant appeals, and by seven exceptions questions the correctness of the Judge's rulings, and alleged error, these exceptions should be set out in the report of the case.

The first exception alleges error in admitting in the first instance over objection the evidence of E. H. Duvall, and other witnesses, as to an agreement between Duvall, representing Sprunt & Son, and the plaintiff, railroad company, in reference to the delivery of cotton to railroad, issuance of bills of lading, etc., and later, in refusing the motion to strike out the same, as the alleged agreement was between other parties than the defendant, and without its knowledge or assent. This exception is overruled for the reason it was competent to show by such testimony that the cotton destroyed, or injured, had been tendered and accepted by the railroad company under such agreement or circumstances as to render the railroad company liable as a common carrier. The testimony was not offered to modify, vary, explain, or enlarge the contract made by insurance policy between the plaintiff and defendant, but for the purpose indicated, and is competent under the case of *R. E. Allen, Bro. & Co.* v. *Burnett,* and authorities therein cited, 92 S. C., pages 99 and 100, 75 S. E. 368.

The second exception alleges error on the part of his Honor in holding that "the contract was intended to insure the plaintiff against any liability as a common carried for cotton in bales, in transit cars, or in or on depots, or platforms, on lines of assured's road. That the stipulation to the effect that the liability of the railroad company attaches from the issue of assured's bill of lading would not, under the agreed statement of facts in this case, and the undisputed facts proven, prevent a recovery. That the cotton here was actually delivered to the railroad company as common carrier, was accepted by it as such. Its liability in case of loss attached. The stipulation with reference to the bill of lading only goes to the question of delivery and acceptance, and the delivery and acceptance can be proven and established otherwise than by the issuance and acceptance of the bill of lading." We think the Court correctly held that the bill of lading covered the cotton, and it was delivered and accepted by the railroad for shipment. From the admitted facts in the case the Court finds "that the cotton, which was burned, was accepted by the railroad company in good faith, and that it was liable as common carrier for the loss. That before the bill of lading was issued, and after forty-three bales had been delivered to the defendant, railroad, and accepted by them, the fire was discovered, and effort made to save the cotton, and it was taken from the depot and scattered about, and some time during the progress of the fire the bill of lading was actually issued." There was nothing in this contrary to good business principles, the railroad in the course of business had a perfect right, in the orderly dispatch of its business, to arrange with a party, who was engaged in the business of purchasing and shipping out cotton, to allow it to be put in its shipping yard, depot, or platform, bale by bale, one or more at a time, for the purpose of having a sufficient quantity to ship out on a car or flat, and not issue bills of lading for each lot as placed, but wait until a sufficient number were received to warrant

a shipment, and issue bills of lading for the whole.    The evidence shows this was done, and was the arrangement between the railroad and Duvall, and a receipt by them under these circumstances and conditions made them receivers as common carriers, and liable as such, and the evidence shows that the cotton was received, not for storage, but for actual shipment by the railroad, and under such conditions that the liability attached as against them as common carriers even though no bills of lading had been issued by them.    The Judge committed no error in his construction of the two paragraphs of the "rider" in holding that the first one covers liability of the assured as common carrier on the cotton situate as this was and received by the common carrier under the agreement and the circumstances the cotton was received, and the second covers the legal liability of the assured as common carrier of the cotton so situated, and in holding under the terms of the policy "that this liability attaches from the issuance of assured's bill of lading and terminates upon delivery to the consignee or succeeding carrier."    If there is any ambiguity the phrases must be construed more strongly against the insurance company and in favor of the insured.    It is said in *Klein* v. *Home Insurance Company,* A. and E. Ency. Law, vol. 16, 863: "If the terms of a policy are susceptible of two interpretations, equally reasonable, it is the general rule that the construction which is more favorable to the insured must be adopted."    "In determining the meaning of the insurance contract the surrounding circumstances must be considered and the interpretation, if capable of two, which will protect the insured should be adopted."    *Quillin* v. *Ohio Ins. Co.,* 40 Penn. 623.    The property in this case was tendered and accepted for shipment prior to the signing of the bill of lading, and the liability attached to the railroad, as common carrier, from that time, to wit: from the time it was received and accepted by them for shipment regardless of the fact that the bills of lading were not issued until later.    *Copeland* v.

*Southern Rwy. Co.,* 76 S. C. 476, 57 S. E. 535; *Mobile R. Co.* v. *Jurey,* 111 U. S. 584.

The third and fourth exceptions allege error on the part of his Honor in considering testimony and recognizing the agreement between the shipper and the railroad, and in holding that defendant was liable when the bill of lading was issued when cotton was partially consumed, and scattered over the grounds, and not on platform. etc., as required by the terms and conditions of the policy. His Honor was correct in admitting evidence to show what the agreement was between Duvall and the railroad, for the reasons stated in considering the first exception, herein, and that the evidence proves an agreemnt that the railroad company was receiving and accepting the cotton, not for storage, but for actual shipment, and under this state of facts becomes liable as common carrier. There is nothing in the policy that restricts the railroad from receiving and accepting cotton for shipment, even on the ground if at or near its depot, platform, and shipping point. That would be a narrow construction to place on the agreement between the parties as to terms and place of insurance to hold that in order to load cotton received and accepted by a common carrier for shipment, that you should first put it on the platform, or in the depot, when it might be more convenient and less expensive to load from the ground near or at the platform, or depot. If cotton got on fire the railroad company had the right, in order to save it, or minimize the loss, to throw it on the ground, and it would be still covered by insurance. The evidence showed that the issuance of the bill of lading was carrying out the contract previously made between the shipper and the railroad, and his Honor committed no error in so holding and recognizing this agreement between the shipper and the railroad. These exceptions are overruled.

The fifth, sixth and seventh exceptions are overruled for the reasons given in overruling the other exceptions, and for the further reason it was agreed between counsel, repre-

senting both sides, that his Honor should decide the facts of the case, and it is reasonable to suppose that in reaching his conclusions that he did not consider any incompetent or irrelevant testimony, and there is sufficient testimony to sustain his findings, and we see no error of law in any of the exceptions. All the exceptions are overruled.

Judgment affirmed.

The Chief Justice *concurs.*

Mr. Justice Fraser, *dissenting.*

1. The rider covered the property insured.

2. The limitations of its liability as to value, including the time of the commencement and termination of liability.

3. The conditions under which it will not be liable at all.

4. The terms of payment of premiums.

By the express terms of the contract, the defendant was not to be liable before the bill of lading was given, nor after it had been delivered to a succeeding carrier. The defendant had the right to say at the time of issuing the policy, "I will not be liable to you until you have fixed your liability to the shipper in writing." It did say so, and the plaintiff agreed to the stipulation by accepting the policy. Suppose the goods had been burned while in the hands of a succeeding carrier, and plaintiff having lost the evidence of the delivery should be made to pay the loss. Suppose. further, upon a suit for the loss which it (the plaintiff) had paid, the insurance company should be able to supply the proof of the delivery. Could any one hold that the delivery to the succeeding carrier was not a complete defense? The contract provided that the liability "attaches from the issue of the assured's bill of lading" and I do not think the Courts have the power to change it.

Mr. Justice Hydrick *concurs.*