AMERICAN FRUIT GROWERS, INC. v. KING *ET AL.*

(114 S. E., 861)

1. CARRIERS—WHETHER POTATOES WERE DELIVERED TO AND ACCEPTED BY RAILROAD FOR SHIPMENT HELD FOR THE JURY.—In shipper's action against railroad for loss of potatoes shipped by barge to railroad's wharf, where the barge and potatoes sank during the night, in which there was evidence that the barge was in a leaky condition when it arrived at the wharf, and that the railroad's agent accepted the shipment and agreed to either unload the barge during the night or put a sufficient force at the pumps to prevent its sinking, and there was evidence for the railroad that the agent positively refused to accept the shipment or assume any responsibility for it on account of the condition of the barge, the contention of whether the potatoes were delivered to and accepted by the railroad for transportation *held* for the jury.

2. APPEAL AND ERROR—EXCEPTION REFERRING TO GROUNDS PREVIOUSLY SET FORTH IN CASE NOT CONSIDERED.—Exception that the Court "erred in refusing to grant the motion to direct a verdict in its favor made by the defendant railroad company made upon the grounds fully hereinbefore set forth" will not be considered because it violates Supreme Court Rule 5, subd. 6 (90 S. E., vii), in referring to grounds previously set forth in the "case."

3. CARRIERS—THAT RAILROAD LACKED FACILITIES BECAUSE OF LABOR TROUBLES OR STRIKES NO DEFENSE FOR LOSS OF GOODS ACCEPTED FOR SHIPMENT.—Where barge in which potatoes had been shipped to railroad's wharf sank after railroad had accepted potatoes for shipment, but before the potatoes had been removed from the barge, the fact that the railroad did not have facilities wherewith to unload the potatoes because of labor troubles or strikes on the wharf was no defense in shipper's action against railroad for loss of the potatoes.

4. APPEAL AND ERROR—EXCLUSION OF TESTIMONY HARMLESS IN VIEW OF OTHER TESTIMONY TO SAME EFFECT.—The exclusion of evidence *held* harmless in view of subsequent admission of abundant testimony to same effect.

5. CARRIERS—EVIDENCE THAT RAILROAD HAD ACCEPTED SHIPMENT AS INTERMEDIATE CARRIER NOT ADMISSIBLE WHERE DEFENSE WAS THAT IT HAD NOT ACCEPTED SHIPMENT IN ANY CAPACITY.—In shipper's action against railroad for loss of potatoes defended on ground that railroad had not accepted the shipment in any capacity, evidence was not admissible to show that it had accepted the shipment as an intermediate carrier, since such evidence would have been inconsistent with its defense.

6. APPEAL AND ERROR—WHERE RAILROAD'S DEFENSE WAS THAT IT HAD NOT ACCEPTED SHIPMENT, EXCLUSION OF EVIDENCE THAT IT HAD ACCEPTED IT AS INTERMEDIATE CARRIER WAS HARMLESS.—In shipper's action against railroad for loss of potatoes defended on ground that railroad had not accepted the shipment in any capacity, exclusion of evidence that railroad had accepted the shipment as an intermediate carrier *held* harmless.

7. CARRIERS—WHERE ISSUE WAS WHETHER RAILROAD HAD ACCEPTED SHIPMENT, EVIDENCE AS TO WHETHER OTHER CARRIER WAS PARTICIPATING CARRIER HELD NOT ADMISSIBLE.—In shipper's action against railroad for loss of potatoes defended on ground that railroad had not accepted the shipment in any capacity, evidence that a certain transportation company with which barge owners had a working agreement was a participating carrier *held* not admissible having no bearing on the issue of whether the defendant had accepted the shipment.

8. APPEAL AND ERROR—INSTRUCTION AS TO LIABILITY OF WAREHOUSEMEN IN SHIPPER'S ACTION AGAINST RAILROAD FOR LOSS OF POTATOES HELD HARMLESS.—In shipper's action against railroad for loss of potatoes, instruction on warehousemen *held* harmless in view of the less drastic liability of a warehouseman than a common carrier.

9. CARRIERS—RAILROAD LIABLE FOR LOSS OF POTATOES ACCEPTED FOR SHIPMENT WITH KNOWLEDGE OF LEAKY CONDITION OF BARGE.—If railroad to which potatoes had been shipped accepted the potatoes before removal from a barge with knowledge of its leaky condition, it was liable for the loss of the potatoes when the barge sank at its wharf, notwithstanding the condition of the barge.

10. CARRIERS—RAILROAD'S POSSESSION MAY BE SHOWN BY EVIDENCE OTHER THAN BILL OF LADING.—A bill of lading or other receipt is not ordinarily essential to complete delivery, but, as such an instrument is merely evidence that the carrier has received possession of the property, such fact may be shown by any other legitimate evidence.

11. CARRIERS—DELIVERY OF GOODS TO SERVANT OR DULY AUTHORIZED AGENT WHO CUSTOMARILY RECEIVES GOODS IN ORDINARY SCOPE OF EMPLOYMENT A SUFFICIENT DELIVERY TO CARRIER.—A delivery of goods to a servant or duly authorized agent of a common carrier who was in the habit of receiving such goods in the ordinary scope of his employment is a sufficient delivery to make the carrier responsible for their loss, notwithstanding any general or special instructions given the agent of which the shipper is ignorant.

12. CARRIERS—STATION AGENT HAS AUTHORITY GENERALLY TO CONSENT TO ANY SPECIAL ARRANGEMENT IN REGARD TO MODE OF DELIVERY.—A station agent has authority generally to consent to any special arrangement in regard to the mode of delivery, and such agreement will be binding on the carrier.

Before McIVER, J. Charleston. January, 1922. Affirmed.

Action by American Fruit Growers, Inc., against S. B. King and Atlantic Coast Line Railroad Company and others. Judgment for plaintiff against the Railroad Company and it appeals.

See, also, 116 S. C., 226; 107 S. E., 924.

King Bros.' fifth request, referred to in the opinion, follows:

(5) The jury are instructed that, where property is tendered and accepted for shipment prior to the signing and issuance of a bill of lading, liability attached to the railroad as a common carrier from that time, to wit: from the time it was received and accepted by them for shipment, regard-

less of the fact that the bills of lading were not issued until later.

The Court: I charge you that is good law. A bill of lading is nothing more than a receipt, and, if they accepted it, it is not necessary to have a receipt or bill of lading in order to attach liability to the company if they did in fact actually accept it and it was delivered to them.

The exceptions of the appellant are as follows:

First. Because the presiding Judge refused the motion for nonsuit made upon the ground that the plaintiff had not connected the Atlantic Coast Line as the intermediate carrier to New York in a through shipment by the statement of the agent on the dock that he would take the truck and care for it, that not being sufficient to fix liability upon the defendant railroad company.

Second. Because the presiding Judge erred in refusing to grant the motion to direct a verdict in its favor made by the defendant railroad company upon the grounds fully hereinbefore set forth.

Third. Because the presiding Judge erred in excluding testimony offered on behalf of the appellant to show that the appellant did not and could not have accepted the shipment because of labor troubles or strikes upon the wharf when said shipment was offered to it, the said testimony being that of P. Nichols, and J. C. Bolchoz. The said P. Nichols being asked, "Did you have any conversation with any one else on the dock representing this matter with reference to the condition of the labor?" objection was made, whereupon the Court ruled as follows: "It would be objectionable, but it would be competent so far as Mr. King is concerned. I think when you turn your freight over to some one to deliver his knowledge would be your knowledge; he would be your agent"—the error assigned being that the appellant was thus deprived of a line of testimony directly supporting a special defense set up in its answer, although

no demurrer had been interposed for such defense, and no motion to strike it out had been made.

Fourth. Because the presiding Judge erred in excluding the following question asked of the witness P. Nichols on his direct examination and the answer thereto: Q. Is there anything else that occurs to you that you might like to refer to? A. No, sir; there is nothing except that at all times on the wharf we acted as an intermediate carrier. We have no means of going to river landings, but other common carriers do go there. Q. Your obligation in this was only as an intermediate carrier? The Court: This is largely a question of law—the error being that the Court held to be a question of law the fact whether or not the defendant-appellant was an intermediate carrier, assuming the obligations of such, whereas that matter is a question of fact as well as of law, and the ruling of the Court necessarily affected with the jury the answer of the witness to the first question above asked, and deprived the appellant of such testimony in the consideration by the jury.

Fifth. Because the presiding Judge erred in sustaining the plaintiff's objection to the following question asked the same witness: Q. As a matter of fact the Mt. Pleasant Transportation Company is a participating carrier? Which question was objected to, and the Court ruled that that was a matter of law, the error assigned being that whether the appellant was a participating carrier was a mixed question of law and fact, and the witness should have been allowed to answer the question so far as the fact was concerned, and the ruling of the Court was calculated to mislead the jury in the consideration of other testimony given by the same witness as to the division of the freight.

Sixth. Because the presiding Judge erred in charging the jury as follows: "Just at this point there is a difference between liability as a common carrier and liability as a warehouseman"—and then proceeding to explain to the jury the liability of common carriers and of warehousemen, which,

while a correct statement of the law as to such liabilities respectively, was inapplicable to the case for the reason that the appellant was charged in the complaint, and so defended the action, as a common carrier, and not as a warehouseman, and was not in any event to be held responsible for the condition of the boat upon which the shipment was brought to its wharf.

Seventh. Because the presiding Judge erred in charging the jury as follows: "The transportation company is a private carrier and is not an insurer; King Bros. is a private carrier, not a public carrier"—and in further instructing the jury immediately thereafter as to the responsibility of a private carrier, the error assigned being that the undisputed evidence was that the Mt. Pleasant Transportation Company was the real party contracting with the shipper and consignee and that the other persons named in the evidence, to wit: Murphy and King, were the agents of that company, and the proof also being that Mt. Pleasant Transportation Company was a common carrier.

Eighth. Because the presiding Judge erred in refusing to charge appellant's first request as follows: "The jury is instructed that, if they find from the evidence that the damage done to the potatoes in question was due to the leaky condition of the barge on which they were loaded by their codefendants, King Bros., they can find no verdict against the defendant railroad company for such damage"—the error assigned being that the Court refused the request because, while the Court said it stated good law, it also said that it did not state all the law, and would be confusing to the jury; whereas it is submitted the appellant had a right to have the proposition submitted because it covered a distinct defense made in the answer which had not been stricken out on demurrer or motion.

Ninth. Because the presiding Judge erred in commenting upon the appellant's second and fourth requests to charge, in using the following language: "Unless the damage was

caused by an act of God or the public enemy and if they received them as a warehouseman only, if they failed to act as a man of reason, prudence and care would have acted under the circumstances, they would be liable"—the errors assigned being that the charge excluded from the consideration of the jury the special defense of labor troubles or strike, and also submitted to the jury the question of the responsibility of appellant as warehouseman when in fact it was sued as a common carrier, the contention of the plaintiff throughout being that the defendant had assumed that relationship to the shipment, and the defense of labor troubles and strike having been specifically set up in the answer as aforesaid.

Tenth. Because the presiding Judge throughout his charge treated the Mt. Pleasant Transportation Company as a private carrier, and the defendant King Bros. as private carriers, when in fact the former was a public carrier under the evidence, and King Bros. the agents only of said Mt. Pleasant Transportation Company, thus depriving this appellant of its rights under the law in receiving the shipment from another common carrier.

Eleventh. Because the presiding Judge erred in granting the defendants King Bros.' first request to charge as set out in the charge, the error assigned being that the Judge thereby charged in respect to a matter of fact, that is to say, that whether or not a company is a private or common carrier is a question of fact to be determined under the evidence, and the undisputed evidence was that the Mt. Pleasant Transportation Company was a common carrier issuing the only receipt in evidence of the shipment, and King Bros. were their agents.

Twelfth. Because the presiding Judge further erred in his comments upon the first and second requests to charge of the defendants King Bros., in defining the duties and limiting the responsibilities of a private carrier, the error be-

ing that the said transportation company was a common carrier, and King Bros. their agents as aforesaid.

Thirteenth. Because the presiding Judge erred in commenting upon the third request of the defendants King Bros. in saying that the appellant would be liable for any loss unless the loss was the result of an act of God or the public enemy, thus eliminating the said two special defenses of the appellant as to labor troubles and strike, and as to the leaky condition of the boat.

Fourteenth. Because the presiding Judge erred in charging the fourth request of the defendants King Bros. and commenting thereon as follows: "(4) The jury are further instructed that, whenever a railroad company permits any one to place merchandise on or at its wharf or platform for the purpose of shipping without objection on its part and so acts as to lead the parties putting the said merchandise there to believe that it has accepted it for the purpose of shipping it, and it is afterwards destroyed while in their possession, under those circumstances, then, the company would be liable"—the error assigned being that this was a charge on the facts in stating to the jury what constituted delivery to and acceptance by the defendant, and a charge on the facts in assuming that the said transportation company and King Bros. were private carriers, whereas it appeared in the evidence that the transportation company was a common carrier and King Bros. their agents.

Fifteenth. Because the presiding Judge erred in holding and charging the jury in connection with the fifth request of King Bros. that a bill of lading is nothing more than a receipt, the error being that in the peculiar circumstances of this case such charge was calculated to mislead the jury because a bill of lading issued in this case would have fixed the liability of the defendant with the terms of shipment and would have indicated the rules of law which were applicable to the case in determining the disputed liability of the two defendants respectively to the plaintiff.

Sixteenth. Because the presiding Judge erred in granting the seventh and eighth requests of the defendants King Bros., and in charging the jury upon such requests as follows: "(7) The jury are instructed that acceptance may be either actual or constructive. The general rule is that the property may be delivered into the hands of the carrier, him to receive it. * * * But this rule is subject to any conventional arrangement between the parties in regard to the mode of delivery. * * * A delivery of goods to a servant or duly authorized agent of a common carrier who was in the habit of receiving such goods in the ordinary scope of his employment is a sufficient delivery to make the carrier responsible for their loss notwithstanding any general or special instructions given the agent of which the shipper is ignorant and has no motive. Moreover, a station agent has authority generally to consent to any special arrangement in regard to the mode of delivery, and such agreement will be binding 'on the carrier.

"The Court: I charge you that that is good law. I charge you that, if a servant or employee of the railroad company whether he was in the highest control or not, if he was in the custom and habit of receiving goods that were tendered to him for shipment, and he did that, the railroad company would be bound by his act, even if he was told by a superior not to accept them, if that information had not been given to the shipper; in other words, if it had been the custom and habit of a shipper to deliver goods to one of the lower clerks who had the right and authority generally to accept shipments, and a shipment was tendered to him, and he accepted it, and it became an actual delivery to him, that would be delivery to the railroad company, even if the clerk had acted contrary to orders in that specific case, unless the fact of his acting contrary to orders had been brought to the attention of the shipper.

"(8) The jury are instructed that the signing of a bill of lading or the issuance of any written shipping contract is

not essential to the complete delivery of a shipment of freight to a railroad company. In other words, if a shipment has passed entirely out of the control of the owner so far as anything remains for him to do before transportation can begin and has come within the unconditional control and direction of the railroad, the question of actual delivery is not dependent on the issuing of a bill of lading. Particularly true is this principle where there has been an actual physical surrender of the property, as where goods properly marked for shipment have been definitely accepted by the agents of a railroad company with a view to immediate shipment or have, with the knowledge of the agent, and without his objection, been placed on the carrier's freight depot or at the carrier's designated place for such deposit for immediate transportation.

"The Court: I charge you that request, making a few trivial changes which I have marked in pencil. I have practically charged you that already in my general charge, the issuing of a bill of lading is not essential to delivery; a bill of lading is merely evidence of delivery and acceptance, and you may prove that fact without the bill of lading, but there must be a delivery to the railroad company and an acceptance by them before the relation of common carrier arises and liability is attached to the carrier."

The errors assigned being: First, that this was a charge on the facts in the statement that a station agent has authority generally to consent to any special arrangement in regard to the mode of delivery, and such agreement will be binding on the carrier, the question in this case being whether the agent had or had not such authority, and the testimony both of the station agent and his superior officer being that he had no such authority; second, it was error to charge that a bill of lading is merely evidence of delivery and acceptance, inasmuch as such bill of lading contains other provisions which in a peculiar case like this would have shown the respective obligations and duties of the

parties; and, third, that the Court thereby indicated throughout that the transportation company was a private carrier, whereas the undisputed proof was that it was a common carrier, and that King Bros. were their agents.

*Messrs. Rutledge, Hyde & Mann,* for appellant, cite: *Labor troubles excuse failure by carrier to deliver:* 82 S. C., 569; 64 S. E., 873. *Placing goods on platform is not acceptance by carrier:* 118 S. C., 48. *Evidence admissible on defenses set up in answer and not stricken out:* 82 S. C., 461; 70 S. C., 8; 80 S. C., 38. *Charge on facts:* 83 S. C., 53; 85 S. C., 450; 87 S. C., 190; 90 S. C., 536; 95 S. C., 221; 96 S. C., 74.

*Mr. Augustine T. Smythe,* for respondent, cites: *Acceptance by carrier:* 118 S. C., 48. *Carrier must judge conditions before accepting freight:* 14 Rich., 181. *Oral demurrer proper to defense as to labor troubles:* 27 S. E., 770; 6 S. E., 938. *Liability of intermediate carrier:* 10 C. J., 66, 539, 541; 81 Am. Dec., 718; 92 Ala., 296; 107 A. L. R., 21. *Labor troubles do not excuse failure to deliver by carrier:* 10 C. J., 113; 14 Rich. L., 181; 4 R. C. L., 724, 743, 744; 46 A. L. R., 208; 32 Am. Rep., 63; 75 Am. Dec., 372; 55 Am. Rep., 837; 25 Am. Rep., 422. *Liability begins with actual delivery:* 10 C. J., 226. *Acts within apparent scope of agent's authority binding:* 10 C. J., 220; 100 N. Y. L., 225; 72 Mo. Ap., 34; 10 C. J., 227; 106 U. S., 258; 170 Ala., 601.

*Messrs. Logan & Grace* and *John I. Cosgrove,* for respondents, cite: *Excluded evidence came out at other places in trial:* 98 S. C., 121; 100 S. C., 115. *Charge as to liability of King Bros. was correct:* 10 C. J., 38; 76 S. C., 479; 96 S. C., 50; 14 U. S., 584; 1 Hutch. Carriers, Sec. 113; 4 R. C. L., 689, 690, 695.

November 20, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for $2,752.50 damages, the value of a cargo of potatoes alleged to have been lost by the sinking of a barge at the wharf of the railroad company in the city of Charleston by reason of the negligence of the defendants on June 9, 1920.

It appears that the plaintiff, as the successor in interest of A. E. Young & Co., was extensively engaged in truck-farming on Daniel's Island, near Charleston, and was accustomed to have the vegetables transported by barge from Daniel's Island to the wharf of the railroad company in Charleston, and there delivered to it for shipment to Northern markets; the railroad company undertaking to unload the cargoes at the wharf and transfer them to cars, or hold for an accumulated shipment. Upon the occasion in question the plaintiff or its predecessor delivered to King Bros. the cargo of potatoes in barrels, marked as consigned to A. F. Young & Co., New York, for transportation to the wharf. King Bros. towed the barge containing the potatoes to the wharf and tied it up there. It arrived in the afternoon some time between 4 and 6 o'clock, the witnesses disagreeing as to the precise time.

The evidence for the plaintiff tended to show that when the barge arrived at the wharf it was in a leaking condition but not more so than was usual with such vessels; that King Bros. so notified the agent of the railroad company who was authorized to receive the shipment under the usual conditions, to be unloaded and transported; that the agent accepted the shipment as it was and agreed to either unload the barge during the night or put a sufficient force at the pumps to prevent its sinking.

The evidence for the railroad company tended to show that the agent positively refused to accept the shipment or to assume any responsibility for it on account of the condition of the barge, and that he was so instructed by his superior officer.

King Bros. left the barge with the cargo tied up at the wharf, and during the night it sank, causing a total loss of the potatoes.

The case appears to have been fought out upon an entirely different theory from that alleged in the complaint. The action is against King Bros. and the railroad company. King Bros. are charged with a breach of contract to safely transport the cargo to the wharf, in that they employed an unseaworthy vessel for that purpose and were derelict in their duty to promptly unload the cargo upon its arrival at the wharf or to sufficiently protect it from sinking by pumping during the night. The railroad company is charged with a breach of its contract or engagement with King Bros. to keep the barge pumped out until such time as it could be unloaded. It is nowhere alleged in the complaint that the cargo was delivered to the railroad company and accepted by it to be unloaded and shipped to the destination indicated by the marking upon the barrels.

On the other hand, the evidence for the plaintiff tended to show that the railroad company accepted the cargo in its then condition to be unloaded by it and shipped to destination; the engagement to unload it during the night or to properly protect the barge from sinking being apparently evidentiary only of the delivery and acceptance. It was upon this theory that the contest was waged, and, as there appears no objection thereto, we will so consider it.

At the close of the evidence for the plaintiff, the railroad company moved for a non-suit upon the ground that the engagement of the agent to receive the cargo and care for it was not sufficient to connect the railroad company with the shipment to New York as an intermediate carrier. The motion was refused.

At the close of all the evidence the railroad company moved for a directed verdict upon the following grounds:

"(1) That there was a total failure of evidence that the railroad company had accepted this shipment for transporta-

tion or had issued any receipt therefore, or done any act showing an acceptance of the same for such transportation, or in any way made itself liable as common carrier for loss of the goods.

"(2) That the whole testimony showed, and the only reasonable inference therefrom was that the loss sustained by the plaintiff was due to the leaky and unseaworthy condition of the boat upon which the goods were loaded for which condition the railroad company was in no way responsible.

"(3) That there was no evidence from which a reasonable inference could be drawn that the railroad company had received the shipment as warehouseman, and had undertaken any duty as warehousemen with reference to the same."

This motion was also refused.

The jury rendered a verdict in favor of King Bros. and against the railroad company for the full amount of damages claimed. The railroad company has appealed.

Treating the case as one against the railroad company for loss of goods after delivery and acceptance of them for transportation, it is clear from the foregoing statement of the evidence that the issues of fact were properly submitted to the jury, and that both motions were properly refused.

We approve the charge of the Circuit Judge, a quotation from one of the concurring opinions in the case of *Behrmann v. Railroad Co.,* 118 S. C., 48; 109 S. E., 397, as follows:

"In order to charge the carrier with the practically absolute liability of a common carrier as compared with the limited liability of a warehouseman, the burden is upon the owner of the goods to establish: (1) That there has been a complete delivery of the goods to the carrier, actual or constructive; (2) that the delivery has been made for shipment, with full shipping directions; (3) that the goods have been accepted by the carrier for immediate shipment or at such time as the convenience of the carrier may suggest;

(4.) that the goods have gone into exclusive possession of the carrier, and that nothing further is to be done with or to them by the owner."

As to each of these requisites there was evidence sufficient to carry the issue to the jury.

We may remark, particularly with reference to the 1 ground of the motion for nonsuit, that it is inconsequential whether the railroad company, on the acceptance of the cargo for transportation, did so in the capacity of an intermediate carrier or of a warehouseman, if as a matter of fact it was derelict in its duty to properly care for the cargo, or violated its express engagement to protect it. If the cargo was accepted in its capacity as a carrier, intermediate or otherwise, it became liable for loss, while in its possession as such, regardless of the question of negligence; if as a warehouseman, it became liable for loss consequent upon its negligence or breach of the express engagement, of which there was sufficient evidence. to carry the case to the jury.

In no event could the second exception, relating to 2 the motion for a directed verdict, be entertained, for the reason that it violates rule 5, subd. 6 (90 S. E., vii), in referring to the grounds previously set forth in the "case."·

This disposes of exceptions 1 and 2. ·

Exception 3 assigns error in the exclusion of evi-3, 4 dence to the effect that the railroad company did not and could not have accepted the shipment because of· labor troubles or strikes on the wharf when the shipment was offered. This exception cannot be sustained for two reasons: First, the specification of error is not that such evidence tended to show that the railroad company did not accept the shipment, a contention which it would perhaps faintly have supported, but it is that by the exclusion the defendant was denied a defense set up in its answer to which no demurrer was interposed nor motion to strike out. The

fact that the defendant's facilities may have been thus impeded was no defense to its liability as a common carrier or a warehouseman, if it had accepted the shipment and engaged to properly care for it. ·*Porcher v. Railroad Co.*, 14 Rich., 181. Second, the exclusion was harmless in view of the subsequent admission of abundant testimony to the same effect.

Exception 4 assigns error in the exclusion of the
5, 6 testimony of defendant's agent that "his obligation in this [matter] was only as an intermediate carrier." The defendant's contention was that it had not accepted the shipment in any capacity. Evidence that it had accepted it as an intermediate carrier would have not only been inconsistent with its defense, but harmless to it, the exclusion of which it is in no position to object to.

Exception 5 assigns error in the exclusion of evi-
7 dence to show that a certain transportation company with which King Bros. had a working agreement was a participating carrier. Whether it was or was not had no bearing upon the issue whether or not the defendant had accepted the shipment and was responsible for it.

Exception 6 assigns error in declaring the law appli-
8 cable to common carriers and warehousemen, the specification being that the defendant was charged as a common carrier, and the law applicable to warehousemen, while correctly stated, was irrelevant. The complaint, as had been shown, did not charge the defendant as a common carrier, and, if it had, the defendant was not prejudiced by the reference to the less drastic liability of a warehouseman.

Exception 7 assigns error in charging that the transportation company and King Bros were each private carriers. In addition to the fact abundantly appearing that the Circuit Judge properly characterized them, whether they were private or common carriers had no bearing upon the ques-

tion at issue whether or not the defendant had accepted the shipment and engaged to take care of it.

Exception 8 assigns error in refusing the defendant's request to charge that, if the loss was due to the leaky condition of the barge, the defendant could not be held liable. The condition of the barge was immaterial, if as a matter of fact the defendant knew of its condition, and notwithstanding this knowledge accepted the shipment and engaged to protect it, which was an issue for the jury.

Exception 9 is disposed of by the disposition of the third exception.

Exceptions 10, 11, and 12 are disposed of by the disposition of the seventh exception.

Exception 13 is disposed of by the disposition of the third exception.

Exception 14 is concluded by the decisions of this Court in the cases of *Copeland v. Railroad Co.,* 76 S. C., 476; 57 S. E., 535, and *Behrmann v. Railroad Co.,* 118 S. C., 48; 109 S. E., 397.

Exception 15 assigns error in the charge that no bill of lading was necessary to bind the defendant; that acceptance of the shipment might be implied from other facts and the conduct of the parties. The correctness of the charge is not open to question.

"A bill of lading or other receipt is not ordinarily essential to a complete delivery, but, as such an instrument is merely evidence that the carrier has received possession of the property this fact may be shown by any other legitimate evidence." 4 R. C. L., 695.

"The liability of the carrier * * * begins with the actual delivery, and not merely with the formal execution of a receipt or bill of lading." 10 C. J., 226.

The reporter will reproduce the fifth request of King Bros., with the remarks of the Circuit Judge.

Exception 16 assigns error in the charge relating to the authority of an agent in connection with the acceptance of goods offered for transportation. The charge correctly states the law.

Let the exceptions be reported.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.